**William SIMMONS**

v.

**Robert F. ZAHRADNICK et al.**

**Civ. A. No. CA77–0365–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 6, 1979.

William Simmons, pro se.

Jerry P. Slonaker, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner, an inmate at the Virginia State Penitentiary, Richmond, Virginia, brings this 28 U.S.C. § 2254 application for a writ of habeas corpus, challenging two Virginia state court convictions. In November, 1975, petitioner was tried by a jury in the Circuit Court of Henrico County, Virginia, convicted of first degree murder, and thereafter sentenced to life imprisonment. Subsequently, petitioner was convicted of attempted burglary, on stipulated evidence, in a nonjury trial before the same court, and received a ten year prison sentence. The federal constitutional issues in the instant action are:

(a) Was petitioner denied his Fourteenth Amendment right to due process of law when the prosecuting attorney questioned petitioner about petitioner's failure to assert his alibi defense to police officers prior to trial?

(b) Was petitioner denied his Sixth Amendment right to effective assistance of counsel when his attorney did not object to the prosecutor's questioning of petitioner about his failure to assert his alibi prior to trial?

Petitioner has filed a brief in support of his position, respondent has filed a brief in response and has moved for dismissal of the petition. The United States Magistrate for this division has filed a proposed opinion which would grant petitioner a writ of habeas corpus, and respondent has filed objections thereto, which, in the Court's view, are well taken. Jurisdiction of the court is premised on 28 U.S.C. § 2241. The Court has the benefit of the state court records and the matter is ripe for disposition.

Testimony at petitioner's trial for murder revealed the following: The murder for which petitioner was tried and convicted was committed on December 17, 1974 at a restaurant in Henrico County, Virginia, known as Lendy's Country Chicken restaurant. After petitioner had become a prime suspect in the police investigation of the crime, Detective Fred Spicer of the Henrico County Police Department traveled to a Tallahassee, Florida jail where he interviewed petitioner.

Detective Spicer identified himself to petitioner as a police officer and advised him of his *Miranda* rights.[1] The petitioner at that time chose not to remain silent, but to

---

1. *Miranda v. Arizona*, 384 U.S. 436, 467–473, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

answer Detective Spicer's questions asked in the course of his investigation of the murder. Petitioner stated that he had been in Richmond, Virginia on December 17, 1974, that he had been by Lendy's Country Chicken restaurant on two occasions, and that "I don't know anything about any murders in Richmond other than what I see in the paper or hear on the news." [2]

Several weeks before petitioner's November 13 and 14, 1975 trial, Detective Spicer, at petitioner's request, again talked with petitioner. The detective once again informed petitioner of his *Miranda* rights. Petitioner then told Detective Spicer that he had been "framed" on the murder charge by two of his acquaintances. Petitioner does not allege, nor does the record reflect, that petitioner asserted his right to remain silent at any time in his two interviews with Detective Spicer.

Petitioner testified in his own defense at trial. He denied any involvement in the murder and stated that, on December 17, 1974, the night of the murder, he was at home, in bed, ill with the flu. The prosecuting attorney, both during his cross examination of petitioner and during his closing argument to the jury, made repeated references to the fact that petitioner had failed to relate this alibi to Detective Spicer during the course of their two interviews, or at any other time prior to trial.

Petitioner cites *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) as support for his argument that it was a denial of due process to allow the prosecutor to cross examine petitioner on his failure to relate his alibi defense to Detective Spicer during either of their two interviews, or at any time prior to trial.

In *Doyle*, the petitioners had been arrested by state narcotic agents and, after receiving *Miranda* warnings, stated only that they did not know what the arrest was "all about." *See, Doyle*, 426 U.S. at 614 and at 622 n.4, 96 S.Ct. 2240 (Stevens, J., dissenting). At their trial, the *Doyle* petitioners testified on their own behalf. The prosecu-

tor, on cross examination, attempted to impeach the petitioners by asking them why they had not related their testimony at trial to the police at the time they were arrested. In reversing the petitioners' convictions, the Court held that

. . . the use for impeachment purposes of petitioners' silence at the time of arrest and after receiving *Miranda* warnings, violated the Due Process clause of the Fourteenth Amendment. *Doyle,* 426 U.S. at 619, 96 S.Ct. at 2245. (Footnote omitted).

The Court in *Doyle* referred to a passage in *United States v. Hale* which set forth reasons why a defendant's post-arrest total silence is "insoluably ambiguous." *Doyle,* 426 U.S. at 617, 96 S.Ct. 2240.

Respondent, for example, had just been given the *Miranda* warnings and was particularly aware of his right to remain silent and the fact that anything he said could be used against him. Under these circumstances, his failure to offer an explanation during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication. There is simply nothing to indicate which interpretation is more probably correct. *United States v. Hale,* 422 U.S. 171 at 177, 95 S.Ct. 2133 at 2137, 45 L.Ed.2d 99.

When a court cannot discern with assurance whether or not a defendant remains silent so as to exercise his Fifth Amendment privilege not to incriminate himself, it is "fundamentally unfair" and therefore a denial of due process to allow the prosecution to use the fact of silence for impeachment. *Doyle v. Ohio,* 426 U.S. at 618, 96 S.Ct. 2240. A defendant may not be penalized for exercising his constitutional rights.

The *Doyle* decision, however, is not applicable to the facts of the instant case. It was not "insoluably ambiguous" under the facts of this case as to whether or not petitioner was silent because he was exer-

**2.** Testimony of petitioner, Tr. T. pp. 144–145.

cising his *Miranda* rights; for petitioner was not, in fact, silent. After being given *Miranda* warnings, petitioner clearly chose to forego his right to remain silent.

In contrast to the petitioners in *Doyle,* whose only statement to police was an inquiry as to what the arrest was all about, petitioner Simmons talked freely with Detective Spicer on two separate occasions. Indeed, the second meeting between Spicer and petitioner was at petitioner's urging, so that petitioner could relate an exculpatory story. During the two interviews with Detective Spicer, petitioner stated that he didn't know anything about any murders, and that he had been the victim of a frame-up. Furthermore, nothing in the record indicates that petitioner, after initially choosing to speak with the police, ever asserted his right to remain silent.

■ Because petitioner, in making selected exculpatory statements to the police, waived his right to remain silent, his failure to relate his alibi until trial was in this Court's view not an exercise by petitioner of his Fifth Amendment right, but instead was probative on the issue of whether the contended alibi was a recent fabrication. There thus was no infringement upon the petitioner's Fifth or Fourteenth Amendment rights when he was cross examined as to why he had not related his alibi prior to trial. *See, United States v. Goldman,* 563 F.2d 501 (1st Cir. 1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 768 (1978); *Twyman v. Oklahoma,* 560 F.2d 422 (10th Cir. 1977), *cert. denied,* 434 U.S. 1071, 98 S.Ct. 1254, 55 L.Ed.2d 774 (1978).

> A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to. This was not a case where the government commented upon . . . a prior exercise of rights. The government asked the jury to measure what the defendant said when he had no rights because he had voluntarily waived them.

*United States v. Goldman,* 563 F.2d at 503 [quoting *Vitali v. United States,* 383 F.2d 121 (1st Cir. 1967)].

Additionally, petitioner asserts that he was denied effective assistance of counsel at his trial. He contends that his attorney should have been aware of the *Doyle* holding and should have objected to the prosecutor's cross examining petitioner as to the reasons for petitioner's failure to previously tell the police of his alibi. Because, as the Court has previously discussed, *Doyle* is inapplicable to the facts of this case, petitioner's counsel was obviously not ineffective for failing to make an objection based on *Doyle.*

Petitioner's application for a writ of habeas corpus will be denied.