**Gary SAMPSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13636.**

District of Columbia Court of Appeals.

Argued June 6, 1979.

Decided Oct. 3, 1979.

---

Stephen J. O'Brien, Washington, D. C., appointed by this court, for appellant.

Norman M. Monhait, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Peter E. George and Harry R. Benner, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and MACK, Associate Judges.

PER CURIAM:

A jury convicted appellant of kidnapping while armed, D.C.Code 1973, §§ 22–2101, –3202, armed rape, D.C.Code 1973, §§ 22–2801, –3203, and assault with a dangerous weapon, D.C.Code 1973, § 22–501. Appellant challenges his conviction by contending that the trial court erred when it permitted the government to impeach his alibi testimony with evidence that he had not recounted his alibi on a previous occasion.[1]

---

1. Appellant urges that the trial court abused its discretion in refusing to impose a sufficiently severe sanction upon the government for failure to comply fully with the rules of discovery, that the trial court erred in instructing the jury about the reasonable doubt standard, and that

We find that the trial court erred, and we reverse the conviction and remand the case for a new trial.

In the early morning hours of August 13, 1977, a man abducted complainant from the street at gunpoint. He forced her into his automobile and drove her to a wooded area where he beat and then raped her. After summoning help, the woman gave the police a description of her assailant and the car he was driving.

On September 12, 1977, the complainant was driving from work with another person when she spotted the car driven by the man who raped her. They gave chase but lost it in traffic. Two days later she saw the car again, this time stopped at a gasoline station. She recognized the driver as her assailant. After taking down the license number, she notified the police. The police identified the owner of the car—appellant's mother—and then located the car itself at appellant's place of work. On September 22, the police, acting pursuant to a warrant, seized the car and took it into the station for photographing. Appellant accompanied the officers voluntarily and permitted the police to photograph him.

At the police station appellant was interviewed by Detective Betty Lowe. Detective Lowe advised appellant of his *Miranda*[2] rights, although she deleted any reference to his being under arrest. Appellant signed a card acknowledging that he understood and waived his rights. Detective Lowe told appellant that he was a suspect in a rape case, and she described the offense to him briefly. Appellant denied any knowledge of the events the detective had described. Appellant and Detective Lowe were together for four hours while appellant's car was being processed, but there was no testimony at trial that during this time appellant said more with reference to the offense than that he was not involved with it.

Appellant was brought to trial on April 17, 1978, after the victim identified his photograph from a group of ten shown to her and then picked appellant out of a line-up. At trial, appellant offered an alibi defense through his own testimony and supported by that of six witnesses. This testimony was that appellant had spent the night in question celebrating a friend's birthday at several downtown clubs and restaurants. The party broke up at 2 a.m., and, according to the testimony, appellant and the friend went to another restaurant where they ate and talked from 3 to 5 a.m., the time during which the rape had occurred.

On cross-examination, over objection, appellant acknowledged that he had not related this alibi to the police when questioned on September 22, 1977, while his mother's car was being processed. The government then offered as rebuttal the testimony of Detective Lowe to the effect that, during their conversation on September 22, appellant had denied either picking up or raping a woman and had made no mention of any aspect of his alibi. Appellant objected to the scope of rebuttal. In closing argument, the prosecutor referred to the detective's testimony and implied that appellant's alibi was a recent fabrication. The jury found appellant guilty as charged, and this appeal followed.

■ The rules of evidence permit the use of a prior inconsistent statement to impeach the credibility of a witness' testimony. 3A J. Wigmore, Evidence § 1040 (Chadbourn rev. 1970). When the accused in a prior statement, "fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent to be used for impeachment purposes." C. McCormick, Evidence § 835 at 68 (2d ed. 1972); 3A Wigmore, *supra* at § 1042. Further, complete silence on a prior occasion and not merely the omission of a material fact has

---

his assault conviction should have merged with his convictions for kidnapping and rape. Given our disposition of this case, we do not address these contentions.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

probative value and may be used to impeach testimony at trial when that silence

persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation. Failure to contest an assertion, however, is considered evidence of acquiescence *only if it would have been natural under the circumstances to object to the assertion in question.* [*United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975) (*emphasis added*).]

However, "[a]s a preliminary matter, the court must be persuaded that the statements [or silence and statement] are indeed inconsistent." *Id.* Thus, the government must establish to the court's satisfaction a "threshold inconsistency" between prior silence and the exculpatory testimony offered at trial before the silence has probative value which would allow its admission at trial for impeachment purposes. *Id. See Hill v. United States*, D.C.App., 404 A.2d 525, 532 (1979).

The Supreme Court, in deciding whether silence before the grand jury was sufficiently probative of inconsistency in later testimony to justify its admission as impeachment evidence, concluded that the initial silence before the grand jury could have been a natural response to "being asked questions for the very purpose of providing evidence against himself," *Grunewald v. United States*, 353 U.S. 391, 423, 77 S.Ct. 963, 983, 1 L.Ed.2d 931 (1957); and therefore, the evidence was inadmissible since the government failed to establish the inconsistency fundamental to this type of impeachment.[3] *Id.* at 422, 77 S.Ct. 963. The Court listed several relevant factors to help make this determination: (1) the defendant's repeated assertions of innocence before the grand jury; (2) the secretive nature of the tribunal in which the initial questioning occurred; and (3) the focus on the petitioner as a potential defendant. *Id.* at 422–23, 77 S.Ct. 963.

Courts were faced with the same problem in those cases decided after *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when the government sought to impeach the accused at trial with his silence in the face of police interrogation after the *Miranda* warnings had been given. The Supreme Court, in addressing this issue and finding that the impeachment by silence under these circumstances was improper, held, as in *Grunewald*, that the silence lacked the "threshold inconsistency" necessary for purposes of impeachment. *United States v. Hale, supra* 422 U.S. at 176, 95 S.Ct. 2133.[4] In other words, the government failed to establish the necessary evidentiary foundation for the use of a prior inconsistent statement as impeachment evidence. The Court stated: "In light of the many alternative explanations for his pretrial silence, we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant admission of evidence thereof." *Id.* at 180, 95 S.Ct. at 2138. The Court recognized that since the accused had just been given the *Miranda* warnings, his failure to make a statement was as consistent with his reliance on his right to remain silent as with recent in-court fabrication. *Id.* at 177, 95 S.Ct. 2133.

**3.** In an earlier case, *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), the Court determined that when the accused declined to testify at his first trial but subsequently testified at his second trial, the initial silence in the face of the same accusation was inconsistent with his testimony and was admissible for impeachment purposes. This decision did not explicitly rely for its basis on an adequate evidentiary foundation, to wit: that the circumstances of the first trial naturally called for a response, creating a threshold inconsistency, but rather it was based on the Court's belief that the immunity against self-incrimination was completely waived when the accused took the witness stand.

Mr. Justice Black, in his concurring opinion in *Grunewald*, questioned the continued validity of *Raffel* in light of the Court's decisions in *Johnson v. United States*, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), and *Grunewald, supra* 353 U.S. at 442, 77 S.Ct. 963.

**4.** The *Hale* Court utilized the relevant factors enunciated in *Grunewald* to make this determination.

This reasoning served as the linchpin for the Court's decision in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which held that impeachment of a defendant with his silence after receiving *Miranda* warnings at the time of arrest was a violation of the due process clause. *Id.* at 618, 96 S.Ct. 2240. The Court noted that although the *Miranda* rights express no assurance that the accused's silence will not be used to his detriment, such an assurance is implicit in these warnings which

> require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, *every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.* [*Id.* at 617, 96 S.Ct. at 2244, *emphasis added.*]

Under these circumstances, the court felt that it "would be fundamentally unfair . . . to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618, 96 S.Ct. at 2245.[5] We note that this holding is entirely consistent with the Court's rationale for the *Miranda* decision that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege [against self-incrimination] when he is under police custodial interrogation. The prosecutor may not, therefore, use at trial the fact that [the accused] stood mute or claimed his privilege in the face of accusation." [*Miranda, supra* 384 U.S. at 468 n. 37, 86 S.Ct. at 1625.][6]

In *Hill v. United States, supra*, we had occasion to reaffirm the constitutional protection of a suspect's silence during custodial interrogation, after *Miranda* warnings, from later efforts at trial to establish the silence as inconsistent with testimony claiming innocence. Nevertheless, we distinguished the facts of *Hill* from those of *Doyle* on the basis that, although the arrestee was given his *Miranda* rights, he chose to waive them and tendered an exculpatory statement omitting details later testified to at trial. We stated that:

> what [Hill] is asserting is a right to remain silent "selectively"; that is, as to some facts and not as to others. The right to remain silent is asserted properly by doing just what the *Doyle* Court said a defendant should be able to do with the assurance that he will not be resultantly penalized, *i. e.*, remain completely silent. This Hill did not do. [*Hill v. United States, supra* at 532.]

Once the *Miranda* rights are properly waived, the constitutional impediment disappears; but the question concerning the "threshold inconsistency," fundamental to impeachment by a prior inconsistent statement, remains. We determined in *Hill* that the omitted facts were so material to the commission of the alleged offense that the failure to have mentioned them amounted to inconsistency. *Id.* at 531. Thus, the evidentiary basis for the impeachment was established, and we affirm the conviction. In so doing, we stated the procedure for laying a proper foundation for such impeachment:

> The pretrial statement to be admissible for impeachment purposes should purport to address the facts surrounding the commission of the alleged offense. The prosecutor . . . must apprise the trial court of the omitted facts to be relied upon as showing inconsistency and the court must consider whether such facts are sufficiently material that the failure to have mentioned them amounts to inconsistency. [*Id.* at 531.]

---

5. In view of the holding, the Court found it unnecessary "to express an opinion on the probative value for impeachment purposes of petitioner's silence." *Id.* at 618 n.8, 96 S.Ct. at 2245.

6. In *In re D.L.J.*, D.C.App., 383 A.2d 1081 (1978), we relied on *Doyle* and the due process clause for *not* allowing such impeachment evidence. We found that reversal was mandated, though the error was not objected to at trial, under the plain error standard.

In *Walker v. United States*, D.C.App., 402 A.2d 424 (1979), we again had occasion to address the same issue, and as in *Hill* we found that the constitutional underpinnings of *Doyle* were not present since the prior statement was not given during custodial interrogation. Unlike our decision in *Hill*, we found that the government failed to establish the necessary threshold inconsistency and, consequently, the court erred in admitting the impeachment evidence, though the error was considered harmless.

■ Appellant, in the instant case, had been given the *Miranda* warnings when questioned at the police station, and waived those rights by signing the police form and by making an exculpatory statement that simply denied his participation in the crime described to him. Thus, as in *Hill* we are not faced with a due process violation; but, unlike the defendant in *Hill*, appellant did not offer an alibi statement here when questioned by the police. Instead, appellant made to the police a general denial of involvement with and knowledge of the crime but he made no statement concerning his whereabouts at the time during which the crime was committed. Consequently, appellant's testimony at trial, *viz.*, that he was at another place and in the company of other people at the critical time, was *not* inconsistent with what he had said to the police earlier.

We find further support for this conclusion by applying the factors deemed relevant by the Supreme Court in *Grunewald* to the case at bar. First, the record reveals that the appellant repeatedly asserted his innocence both at the police station and later at trial. Second, we consider the police station interrogation more secretive than interrogation before the grand jury because it lacks "such minimal safeguards as the presence of public arbiters and a reporter . . . ." *United States v.*

*Hale, supra* 422 U.S. at 179, 95 S.Ct. at 2138. Finally, appellant was aware that he was a potential defendant since he had just been given the *Miranda* warnings at the police station though he was told that he was not under arrest.

Consequently, the government has failed to establish a threshold inconsistency between appellant's prior statement at the police station and his later alibi defense at trial. Thus, any omission of facts from the initial statement lacks sufficient probative value of inconsistency and therefore is inadmissible as impeachment. Accordingly, the trial court erred in allowing the government to (1) cross-examine appellant concerning his silence at the police station, (2) present rebuttal testimony on the same point, and (3) argue the inconsistency to the jury.

■ Since we find error which was properly objected to at trial, we are governed by the standard of review enunciated in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).[7] *See Walker v. United States, supra*. Upon review of the record, "it is impossible to conclude that substantial rights were not affected." *Kotteakos, supra* at 765, 66 S.Ct. at 1248, since appellant's alibi defense rested entirely upon his credibility in the eyes of the jury and the government at trial made substantial use of his prior statement to destroy that credibility.

*Reversed.*

7. The standard is as follows:
    But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry can-
not be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand. [*Kotteakos v. United States, supra* at 765, 66 S.Ct. at 1248.]