## Richmond

JERRY SQUIRE

V.

COMMONWEALTH OF VIRGINIA

October 16, 1981.

Record No. 801612.

Present: All the Justices.

*R. Shawn Majette; Joseph Ryland Winston (Lombart & Majette,* on briefs), for appellant.

*Roscoe C. Roberts, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Jerry Squire was tried by a jury on indictments charging him with sodomy, robbery, and attempted rape. At trial, Squire and other defense witnesses testified that he was at another location when the crimes were allegedly committed. Rejecting his alibi defense, the jury found Squire guilty as charged, and fixed his punishment at confinement in the State penitentiary for fifteen, five, and five years, respectively, upon which verdicts the trial court entered judgment. On appeal, the sole question is whether the court erred in permitting the Commonwealth to cross-examine Squire about his failure to mention his alibi to the investigating officer.

On the morning of March 8, 1980, the prosecuting witness reported to the Richmond Bureau of Police that earlier that day she had been waiting on the street for a bus when a man accosted her, dragged her behind a house, committed an act of sodomy upon her, robbed her, and attempted to rape her. She gave to Detective Sergeant Norman A. Harding a detailed description of the race, approximate age and height, unique physical characteristics, and manner of dress of the man.

In the course of his investigation the following morning Harding observed Squire, who fitted the description given by the vic-

tim, walking along a street about seven blocks from the scene of the alleged crimes. Squire appeared to be intoxicated. The officer arrested him for being drunk in public, removed him to the police station, and photographed him. That same day, after Harding submitted to the victim a photographic array from which she identified Squire as her assailant, the officer transported her to the police station for further questioning. While she was seated in an assembly room, he brought Squire into the room to "book him" on the offenses reported by the victim. As they entered the room, the victim nodded affirmatively to Harding to indicate that Squire was the culprit.

Harding testified that after booking Squire he took him into the interview room and advised him of his constitutional rights. After Squire had signed the form acknowledging that he understood his rights, Harding "interviewed him". During the interview, according to Harding, Squire said that he would like to see the person who had accused him of the crimes. Harding testified that he brought the victim into the room and asked her, "Do you know this man"? She replied in Squire's presence, "That's the man that attacked me"; Harding took her from the room "and that was it".

The form, introduced in evidence as an exhibit, informed Squire that he was being interviewed by Harding in connection with the alleged commission of the three specified crimes against the named victim. The form contained numbered paragraphs warning the accused that he had an absolute right to remain silent, that any statement he made without counsel present could be used as evidence against him, and that he had the right to have with him an attorney, either retained or appointed, during this or any future police interview. Below the numbered paragraphs was listed a question whether the accused understood the explanation of his rights, which Squire answered "Yes", an unnumbered final paragraph informing him that he could voluntarily waive his rights and make a statement, and signature lines. Squire signed as the accused; Harding signed as a witness.

Squire testified on direct examination that on the morning of March 8 he accompanied a friend, Robert Short, Jr., to a store, bought beer for both of them, drank his beer at Short's house, and then returned home and lay down because he was "feeling a little high". Later, Squire's nephew, Mason, came to see him, and because Squire was unable to leave the house, Mason went out and bought a sandwich for him.

Asked on cross-examination whether he had told Harding that he was with Short and Mason on March 8, Squire replied that he did not think so. When Squire was asked why he had not explained to the investigating officer that he had been at home that morning, his counsel objected to this line of questioning on the ground that if Squire, having been advised of his constitutional rights, chose not to "go into anything", he could not be questioned about the interview. After an unrecorded conference between the trial judge and counsel had been concluded, Squire, responding to additional questions, conceded that he had been advised of his constitutional rights by Harding and had signed the form. The cross-examination continued as follows:

"Q. All right, and what did you tell Detective Harding?
"A. I told him — I don't remember what I told him.
     I ain't tell — all I told him was what he asked me, I can't remember what he asked me.
"Q. Well, you didn't tell him about Mr. Mason and Mr. Short, now, why didn't you say anything about that to him?
* * *
"A. He didn't ask me.
* * *
"A. I told him exactly what he asked me.
"Q. Well, what did he ask you?
"A. I don't know now.
"Q. And you don't know why you didn't mention about Mr. Mason and —
"A. I can't remember what he asked me now."

Squire contends that the prosecution should not have been permitted to question him about the interview with Harding because the *Miranda* warning on the form which he signed stated that he could remain silent and that his silence would not be used against him. He relies upon *Doyle* v. *Ohio,* 426 U.S. 610 (1976), followed in *Schrum* v. *Commonwealth,* 219 Va. 204, 246 S.E.2d 893 (1978), as controlling authority.

In *Doyle,* police arrested the two defendants at the scene of a narcotics transfer. After being advised of their right to remain silent, they made no statements to the police except for perfunctory expressions by one of indignation and innocence. At trial, both defendants asserted as a defense that they were victims of a

"frame-up". The trial court, over objection, permitted the prosecutor to cross-examine the defendants about their failure to mention this alibi prior to trial. They were convicted. On appeal, the State argued that the prosecutor's questions were permissible because they were used only for impeachment purposes. 426 U.S. at 617. The Supreme Court rejected this argument, holding that using against the defendants their silence after they had received *Miranda* warnings violated their due process rights guaranteed under the Fourteenth Amendment. *Id.* at 619.

We held that *Doyle* was dispositive of the appeal in *Schrum*. In *Schrum,* the defendant, accompanied by his attorney, surrendered to the police and executed a *Miranda* "rights waiver". 219 Va. at 209, 246 S.E.2d at 897. On advice from his attorney, he refused to make a statement. At trial, the prosecutor, over objection, questioned the investigating officer about the defendant's refusal to make a statement. On appeal, we held that *Doyle* mandated reversal of the defendant's conviction.

In *Anderson* v. *Charles,* 447 U.S. 404, *reh. denied,* 448 U.S. 912 (1980), the Supreme Court declared that "silence" is not to be given such a formalistic meaning that any omission of fact from a prior statement to police becomes inadmissible for impeachment. 447 U.S. at 409. On trial for murder, the defendant testified that he stole the victim's car from a certain parking lot. During pretrial police interrogation, however, the defendant had stated that he stole the car from another location. On cross-examination, the prosecutor asked the defendant why he had not given the police the version to which he testified. The Supreme Court rejected the defendant's contention that this questioning violated his right to remain silent, citing the difference between impeachment by use of a defendant's silence and impeachment by use of a prior inconsistent statement. Significantly, the Court noted that in *Doyle,* although one defendant had made some remarks to the police, both the opinion of the Court and the dissenting opinion "analyzed the due process question as if both defendants had remained silent". *Id.* at 407 n.2.

In *United States* v. *Mitchell,* 558 F.2d 1332 (8th Cir. 1977), the court approved a prosecutor's comment on the defendant's silence when confronted during an interview with information showing the falsity of his alibi. "The *Hale* and *Doyle* cases are inapplicable", said the court, "because in those cases the defendants, exercising their constitutional rights, chose not to speak to police.

Appellant Mitchell, however, signed a written waiver of his *Miranda* rights, and voluntarily made statements to police". 558 F.2d 1335. *See also Twyman* v. *Oklahoma,* 560 F.2d 422 (10th Cir. 1977), *cert. denied,* 434 U.S. 1071 (1978).

In *United States* v. *Beechum,* 582 F.2d 898 (5th Cir. 1978) *(en banc), cert. denied,* 440 U.S. 920 (1979), the court approved a prosecutor's comment on the defendant's failure to offer any explanation for his conduct except, "Since you have all the answers, you tell me". 582 F.2d at 904. The court held that this was not a comment on silence, but an appraisal of what the defendant said. *Id.* at 906. The Fifth Circuit has recently reaffirmed *Beechum* in *Lofton* v. *Wainwright,* 620 F.2d 74 (5th Cir. 1980). *See also United States* v. *Agee,* 597 F.2d 350 (3rd Cir.) *(en banc), cert. denied,* 442 U.S. 944 (1979).

In the present case, Squire did not remain silent after receiving his *Miranda* warnings. Harding testified that he interviewed Squire, and Squire conceded that he answered Harding's questions although he could not remember what questions were asked. During the interview, Squire asked to be confronted by his accuser, an action inconsistent with an intention to maintain silence.

■ Squire could have exercised his constitutional right to remain silent in accordance with the *Miranda* warning that he acknowledged having received. If he had done so, he could not properly have been cross-examined at trial about his failure to mention his alibi to the investigating officer. Once he broke his silence, however, to answer questions under pretrial police interrogation and to request to see his accuser, he did not have the right thereafter to remain silent selectively and then prevent the prosecution from cross-examining him about his failure to reveal the exculpatory facts to which he testified. *See Hill* v. *United States,* 404 A.2d 525, 531-32 (D.C. App. 1979), *cert. denied,* 444 U.S. 1085 (1980); *Simmons* v. *Zahradnick,* 465 F. Supp. 115 (E.D. Va. 1979); *cf. Sampson* v. *United States,* 407 A.2d 574 (D.C. App. 1979). It has been held permissible for a prosecutor to cross-examine an accused about a crucial omission from a statement given after *Miranda* warnings under circumstances making it "most unnatural" for the defendant to have made the omission. *People* v. *Savage,* 50 N.Y.2d 673, 679, 409 N.E.2d 858, 861 (1980).

■ Obviously, the purpose of the cross-examination was to impeach Squire's testimony as a recent fabrication. We hold that where the record clearly shows that the defendant chose not to

rely on his right to remain silent, but instead made statements to police, the prosecution may show and comment upon the defendant's failure to relate to police crucial exculpatory statements recited by the defendant at trial. Since the record here clearly shows that Squire was interviewed by police after choosing not to rely on his right to remain silent, the trial court did not err in overruling his objection to the prosecutor's cross-examination.

*Affirmed.*

COMPTON, J., concurring.

I am in full agreement with the opinion of the court. I write in concurrence only to point out that the dissent, in contending *Doyle* v. *Ohio,* 426 U.S. 610 (1976), controls here, has disregarded a fundamental rule of appellate procedure by construing narrowly *against* the Commonwealth the evidence that the defendant voluntarily submitted to an "interview."

Elementary is the proposition that in a criminal appeal we view the evidence in the light most favorable to the Commonwealth. The dissenters, however, argue that defendant's "interview" with the police "may have been confined to the routine dialogue incidental to the 'booking' process." Such an argument examines the evidence in the light most favorable, not to the Commonwealth, but to the defendant; this is wrong.

"Interview" is defined as a "formal meeting for consultation." *Webster's Third New International Dictionary* 1184 (1971). "Consultation" means a "conference . . . between two or more persons . . . to consider a special matter," for example, "holding frequent consultations with [a] lawyer to discuss the case." *Id.* at 490.

The record is clear that *after* defendant was "booked" he voluntarily submitted to an "interview" with Detective Harding. Viewed in the light most favorable to the Commonwealth, this evidence does not connote a mere informal chat between the two; rather, it means that defendant made significant statements pertinent to the crime during a formal conversation with the officer about the case. Thus, it is manifest from the record, analyzed from a proper appellate perspective, that unlike the defendant in *Doyle,* this defendant elected to discuss fully the crime with the police. Consequently, the trial court correctly ruled that the prose-

cutor's cross-examination about defendant's failure to mention his alibi during that discussion was proper.

POFF, J., dissenting.

I dissent. *Doyle* v. *Ohio,* 426 U.S. 610 (1976), mandates reversal.

In effect, the majority holds that cross-examination of the defendant concerning his failure to make a post-arrest alibi statement was constitutionally competent to impeach his alibi testimony at trial, *i.e.,* to show that his testimony was a "recent fabrication". Implicit in that holding is the finding that the defendant waived his right to remain silent by breaching his silence.[1] The majority discusses the facts and the holding in *Doyle,* acknowledges that we applied the rationale and rule in that case to reverse a conviction in *Schrum* v. *Commonwealth,* 219 Va. 204, 246 S.E.2d 893 (1978), and then, without expressly saying so, concludes that *Doyle* is inapposite.

In my view, *Doyle* is factually and jurisprudentially indistinguishable from the case at bar. Doyle had been arrested and given his *Miranda* warnings. On cross-examination, the prosecutor asked him why he had not told the arresting officer the "frameup story" he told at trial. Noting that "[s]ilence in the wake of [*Miranda*] warnings may be nothing more than the arrestee's exercise of" his right to remain silent, the Supreme Court held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle,* 426 U.S. at 618 (footnote omitted).

Apparently, the majority interprets this rule to apply only when an arrestee remains mute after he receives *Miranda* warnings. While it is true that "[b]oth the Court and the dissent in *Doyle* analyzed the due process question as if [Doyle] had remained silent", *Anderson* v. *Charles,* 447 U.S. 404, 407 n. 2 (1980), Doyle had not remained mute. After the police had explained the reason for the arrest, Doyle protested, "[I don't] know what [you are] talking about", *Doyle,* 426 U.S. at 622-23 n.4. Here, Squire de-

---

[1] The form Squire signed when he was given his Miranda rights, sometimes misdescribed as a "Rights Waiver Form", is advisory only; it does not constitute a written waiver. To the contrary, the form expressly advised Squire that "[y]ou may voluntarily waive the rights that have been explained to you and make a statement if you so desire."

manded to be confronted by his accuser, a circumstance the majority characterizes as "an action inconsistent with an intention to maintain silence." If so, it was no more so than Doyle's protest. And if Doyle's breach of silence was not a waiver of his right to remain silent, Squire's demand was not.

Nor does the fact that Squire participated in an "interview" with the police justify a finding of waiver. The record is utterly devoid of any account of the questions posed by the police and the answers given by the accused. For all this Court can tell, the "interview" may have been confined to the routine dialogue incidental to the "booking" process. Indeed, had the officer's questions focused upon Squire's involvement in the crime for which he was arrested, it is reasonable to assume that the Commonwealth would have offered evidence of Squire's replies as proof of waiver. An appellate court should never presume waiver of a constitutional right from a silent record. See Boykin v. Alabama, 395 U.S. 238, 242 (1969).

The reason the Doyle court analyzed the due process question in that case as if the arrestee had remained silent was that he had said nothing of substance relevant to his involvement in the offense with which he was charged. The same is true here, and we should make the same analysis and apply the same rule.[2] The Commonwealth's questions concerning Squire's failure to make a post-arrest alibi statement constituted a comment upon his exercise of a constitutional right in violation of the Due Process clause of the Fourteenth Amendment. I would reverse the judgment and remand the case for a new trial.

STEPHENSON, J., joins in dissent.

---

[2] The majority analysis relies principally upon three cases, all of which are distinguishable from the instant case. In both *Anderson* v. *Charles, supra* and *United States* v. *Mitchell,* 558 F.2d 1332 (8th Cir. 1977), the arrestee had made substantial statements relevant to the crime; and in *United States* v. *Beechum,* 582 F.2d 898 (5th Cir. 1978), the challenged comment was not a comment on the arrestee's silence but rather, as the majority has noted, "an appraisal of what the defendant said".