**Richmond**

SONYA L. DURANT

v.

COMMONWEALTH OF VIRGINIA

No. 0047-87-2

Decided December 20, 1988

·COUNSEL

Charles C. Cosby, Jr. (Boone, Carpenter, Beale, Cosby & Hyder, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

HODGES, J.—Sonya Durant was convicted by a jury of aggravated sexual battery in violation of Code § 18.2-67.3. She was sentenced in accordance with the jury's verdict to three years in the penitentiary. On appeal, Durant raises the following issues: (1) whether the trial court erred in denying her motion for a mistrial based on the Commonwealth's attorney's allegedly improper comments about her request to speak to an attorney before answering questions; (2) whether the trial court erred in excluding testimony from several witnesses about past violent acts of her husband; and (3) whether the trial court erred in refusing to allow her seven year old son to testify regarding an observed violent incident between her and her husband. We reverse the defendant's conviction on the ground that the Commonwealth's attorney's references to the defendant's post-arrest, post-*Miranda* silence violated her due process rights. We also reverse on the ground that the court erred in refusing to allow Durant's seven year old son to testify. Because the matter is remanded and the evidence presented at retrial may differ significantly from that introduced at the first trial, we decline to address whether the court erred in excluding the testimony of several witnesses regarding past violent acts of Durant's husband.

Durant's conviction arose out of two incidents which occurred in May and June of 1986. On the evening of May 29, 1986, Durant and her husband, Leroy, were celebrating their marriage with Durant's fifteen year old daughter and seven year old son. Later, after her daughter showered, Durant told her not to put on her gown and to remove her underclothes. Leroy, who was dressed in his pajama bottoms, called the girl into the bedroom. He told Durant, who was also naked, to lie on top of her daughter. Durant told her daughter that she did not think her daughter cared about her, but that she was going to prove how much she cared about

her daughter. Leroy told Durant to touch her daughter's breasts and vagina with her hands and mouth and she complied. He then instructed the daughter to do the same to her mother. He also touched the victim's vagina. When her daughter cried, Durant told her that there was nothing to be ashamed about. After the incident, the daughter put on her clothes and slept on the sofa. Durant and her husband both told the victim not to tell anyone about the incident.

The second incident occurred six days later. Again, at her husband's direction, Durant performed sexual acts with her daughter. The victim testified that later that evening Leroy had sex with her although her mother begged him not to. At trial, Durant denied that her husband had sex with her daughter.

A few days after the second incident, the daughter told her mother that she did not want to stay in the house with Leroy. Durant gave her bus fare and she left home. Durant also arranged for her son to stay with his natural father. She left her husband several weeks later. The victim told her grandmother about the incidents in July. Her grandmother contacted the Child Protective Services, which led to the defendant's arrest. Upon her arrest, Durant was advised of her *Miranda* rights. She elected to remain silent until speaking with an attorney.

## I. Post-arrest, Post-*Miranda* Silence

Durant argues that the trial court erred in refusing to grant the motion for a mistrial after the Commonwealth improperly commented on her post-arrest, post-*Miranda* silence. At trial, Durant, who admitted performing the acts, relied upon the defense of duress. She testified that on the evening of the first incident her husband told her that he wanted her to have sex with another woman. Although she cried and told him that she did not want to, he said he would not be denied and he threatened to kill her if she did not comply. Durant claimed that her husband kept a gun and knife in the bedroom and that she performed the acts because she was afraid for her daughter and herself. She testified that her marriage was violent and that her husband had abused her in the past. Durant explained that she did not leave her husband until several weeks after her children left because she was afraid of what he might do.

When questioned on cross-examination about why she never told anyone about the incidents, Durant responded that she did not have a telephone at home and that her husband was always with her. When the Commonwealth's attorney asked her why she did not tell the whole story to the police when she finally saw them, she responded, "Because I told them that I wanted to talk to my lawyer first and that is what I did." The Commonwealth's attorney then commented, "[S]o instead of coming forth and spewing forth the whole story, you made the statement that you wanted to talk to somebody else?" The defense objected and moved for a mistrial. The court denied the motion. During closing argument, the Commonwealth's attorney again referred to Durant's decision to speak with an attorney rather than telling the police the whole story.

■ The United States Supreme Court held in *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), that the use for impeachment purposes of a defendant's silence after his arrest and the issuance of the *Miranda* warnings violated the Due Process Clause of the Fourteenth Amendment of the United State Constitution. The holding in *Doyle* was based on the rationale that it is a deprivation of due process for the state to guarantee certain rights and then penalize the defendant at trial for legitimately exercising his rights. The Commonwealth, however, argues that the Commonwealth's attorney's comments in this case were properly used to negate the defense of duress, rather than for impeachment purposes, and, therefore, there was no *Doyle* violation. The Commonwealth asserts that "[i]f the defendant failed to take advantage of a reasonable opportunity to avoid doing the acts without being harmed, [s]he may not rely on duress as a defense." *Pancoast v. Commonwealth*, 2 Va. App. 28, 33, 340 S.E.2d 833, 836 (1986) (citations omitted). The Commonwealth argues that the prosecutor's comments were designed to show that the defendant did not satisfy the "escape or avoid" prong of the defense; thus, the comments were not intended to impeach the defendant's testimony by capitalizing upon her post-arrest, post-*Miranda* warning silence. Based on the holdings in *Doyle* and *Wainwright v. Greenfield*, 106 S. Ct. 634 (1986) (use of defendant's silence to rebut affirmative defense of insanity held improper), we reject the Commonwealth's argument and reverse, holding that the Commonwealth's comments were improper and a violation of Durant's due process rights.

 In *Doyle*, the defendants, who were arrested for the sale of marijuana, claimed for the first time at trial that they were framed. Over objection, the prosecution cross-examined them as to why they had not told the arresting officer about the frame-up. The Supreme Court reversed, holding that the use for impeachment purposes of a defendant's silence after his arrest and receipt of the *Miranda* warnings was a violation of the Fourteenth Amendment's Due Process Clause. The Court held:

> [W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Doyle*, 426 U.S. at 618. However, "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings," the Supreme Court held, "we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." *Fletcher v. Weir*, 455 U.S. 603, 607 (1982). Furthermore, when a defendant elects to waive his right to remain silent by making exculpatory statements to the police, cross-examination by the prosecutor about why the defendant had not related his alibi prior to trial is not an infringement upon the defendant's fifth or fourteenth amendment rights. *Simmons v. Zahradnick*, 465 F. Supp. 115 (E.D. Va. 1979) (*Doyle* holding was inapplicable to facts of case); *Squire v. Commonwealth*, 222 Va. 633, 283 S.E.2d 201 (1981). In *Simmons*, the court said:

> Because petitioner, in making selected exculpatory statements to the police, waived his right to remain silent, his failure to relate his alibi until trial was in this court's view not an exercise by petitioner of his Fifth Amendment right, but instead was probative on the issue of whether the contended alibi was a recent fabrication.

*Simmons*, 465 F. Supp. at 118. Likewise, in *Squire*, the supreme court held:

[The defendant] could have exercised his constitutional right to remain silent in accordance with the *Miranda* warning that he acknowledged having received. If he had done so, he could not properly have been cross-examined at trial about his failure to mention his alibi to the investigating officer. Once he broke his silence, however, to answer questions under pretrial police interrogation and to request to see his accuser, he did not have the right thereafter to remain silent selectively and then prevent the prosecution from cross-examining him about his failure to reveal the exculpatory facts to which he testified.

*Squire*, 222 Va. at 638, 283 S.E.2d at 205.

Since Durant did not waive her right to remain silent and the Commonwealth referred to her post-arrest, post-*Miranda* warnings silence both during cross-examination of Durant and in closing argument, *Doyle* is dispositive and mandates reversal of the defendant's conviction. While the use of Durant's pre-arrest silence is proper for impeachment of her duress defense, *see Jenkins v. Anderson*, 447 U.S. 231 (1980) (impeachment of a defendant's credibility by his pre-arrest silence is neither a violation of defendant's right to remain silent or a denial of fundamental fairness), use of Durant's post-arrest, post-*Miranda* silence is a violation of both her right to remain silent and a denial of fundamental fairness.

Moreover, the fact that Durant relied upon the affirmative defense of duress at trial, which required that she prove she attempted to escape or avoid doing the acts, does not distinguish this case from *Doyle. See Wainwright*, 106 S. Ct. at 639. In *Wainwright*, the defendant pled not guilty by reason of insanity to sexual battery. The Supreme Court held that the prosecutor's use of the defendant's post-arrest, post-*Miranda* silence as evidence of defendant's sanity was fundamentally unfair, and thus, a violation of due process. *Id.* at 641. The Court dismissed the government's argument about the probative value of the defendant's silence by pointing out that "the State's legitimate interest in proving that the defendant's behavior appeared to be rational at the time of his arrest could have been served by carefully framed questions that avoided any mention of the defendant's exercise of his constitutional rights to remain silent and to consult counsel." *Id.* at 640

(footnote omitted). Likewise, the Commonwealth's legitimate interest in this case of proving that Durant did not try to escape or avoid committing the acts could have been served by the same careful framing of questions.

Lastly, we reject the Commonwealth's harmless error argument because, although there was evidence to support the jury's verdict, we cannot conclude that no other verdict could have been reached. *See Schrum v. Commonwealth*, 219 Va. 204, 213, 246 S.E.2d 893, 899 (1978). Furthermore, the fact that the Commonwealth also referred during closing argument to the defendant's silence and election to speak to counsel weakens the harmless error argument. *See Hayton v. Egeler*, 555 F.2d 599 (6th Cir.) (prosecutor's attempted impeachment of defendant's alibi at trial by inquiring about the defendant's post-arrest silence was harmless error due to strong evidence of defendant's guilt and fact that prosecutor did not pursue the matter or refer to the silence later in trial), *cert. denied*, 434 U.S. 973 (1977).

## II. Evidence of Prior Acts

On appeal, Durant argues that the court erred by excluding on grounds of remoteness the testimony of Sandra Sandiford, Pam Harris, and Leroy's former wife, Deborah Durant. She contends that their testimony was relevant because the evidence would have shown that Leroy Durant had a violent tendency and that he used his violence to satisfy his deviant sexual desires; therefore, her fear was real. Although the proffered testimony of the witnesses related to acts which occurred three to six years prior to the incidents in this case, Durant argues that the time factor should go to the weight of the evidence, not the admissibility. However, since this matter must be retried, it is inappropriate for us to rule on this issue. Questions concerning the admissibility of testimonial evidence must be determined by the presiding judge within the context of the trial. At any retrial the evidence may differ significantly from that presented at the previous trial, so evidence which may have been too remote to be admissible in the first trial may not necessarily be too remote at retrial. Therefore, we will not address whether the trial court erred in refusing to admit this testimony.

### III. Competency of Child Witness

Durant also contends that the court erred in excluding on competency grounds her seven year old son's corroborating testimony.[1] The court found that the defendant's son did not understand the meaning of an oath and that he knew what the defendant and her attorney expected him to say. Durant argues, however, that her son's responses during voir dire revealed that he had a sense of moral responsibility, felt a duty to tell the truth, and he could distinguish right from wrong. We agree and reverse, holding that the trial court abused its discretion in finding that the child was not competent to testify.

In Virginia, a child need not have reached a certain age in order to be competent as a witness. "A child is competent to testify if it possesses the capacity to observe events, to recollect and communicate them, and has the ability to understand questions and to frame and make intelligent answers, with a consciousness of the duty to speak the truth." *Cross v. Commonwealth*, 195 Va. 62, 64, 77 S.E.2d 447, 449 (1953) (citations omitted). Because of the trial court's opportunity to see the child and to observe his or her demeanor on the stand and manner of testifying, the determination of competency is left largely to the discretion of the trial court. Therefore, the trial court's judgment will not be reversed in the absence of manifest error. *Carpenter v. Commonwealth*, 186 Va. 851, 864, 44 S.E.2d 419, 425 (1947). However, a review of the court's examination of the child reveals that the trial court abused its discretion by excluding the witness on a matter of credibility as opposed to competency.

The competency of a witness to testify is a determination to be made by the trial judge based upon the circumstances before him. *Shrader v. Commonwealth*, 2 Va. App. 287, 291, 343 S.E.2d 375, 377-78 (1986) (citing *Williams v. Williams*, 192 Va. 787, 793, 66 S.E.2d 500, 504 (1951)). On the other hand, the weight to be given to the evidence and a determination of the witness's credibility are matters for the fact finder to decide. *Bridgeman v. Commonwealth*, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986) (citing *Sutphin v. Commonwealth*, 1 Va. App. 241, 248,

---

[1] Durant's son would have testified that he saw Leroy Durant hit his mother twice and threaten her with a gun and that Leroy hit him.

337 S.E.2d 897, 901 (1985)). "A rule which would permit a trial judge presiding over a trial by jury to exclude a witness on account of matters merely affecting his credibility would be a novelty in American jurisprudence." *State v. Zeezich*, 61 Utah 61, ____, 210 P. 927, 928-29 (1922).

After ruling that Durant's son was not competent to testify, the court explained to defense counsel: "I don't think he [the son] completely comprehends an oath. He is at a worse stage than a four year old because he already knows what he expect [sic] him to say and he doesn't want to upset you." The court's explanation reveals a concern that the boy was told what to say in court. However, when asked by the court what defense counsel told him to say, he answered, "The truth." Furthermore, although he responded in the negative when asked whether he understood what it meant to take an oath to tell the truth, further questioning revealed that he knew he would get in trouble if he told a lie and that God would not like that.

The relevant portions of the court's voir dire of the boy appear below. The following exchange took place between the court and the boy:

Q: Do you know what it means to hold up your hand and take an oath to tell the truth?

A: No.

Q: You don't know what it means?

A: (Shook head in a negative manner.)

Q: Do you understand what might happen if you don't tell the truth.

A: Yes.

Q: What might happen?

A: You would get in trouble.

Q: You go to Sunday school or church?

A: I go to church.

Q: You do. How often?

A: Sometimes.

Q: Sometimes. What are you going to do here today if you are asked any questions?

A: (No response.)

Q: Let's skip that a moment. Has anybody talked to you about what you are supposed to say here today?

A: Yes.

Q: Who?

A: My mother's lawyer.

Q: Your mother's lawyer.

A: (Nodded head in an affirmative manner.)

Q: Has he talked to you about what you are supposed to say here today?

A: Yes.

After the court excluded the jury, the court stated: "I am sure that this child doesn't understand an oath having said what he did." The court, however, granted defense counsel an opportunity out of the jury's presence to lay a foundation for the boy's testimony. The following exchange took place between defense counsel and the defendant's son:

Q: If you tell a lie at school what would happen to you?

A: Get punished.

Q: If you told a lie here in the courtroom would that be wrong?

A: Yes.

Q: Do you think that — Do you believe in God?

A: Yes.

Q: Do you believe that if you told a lie here in the courtroom God would not like that?

A: Yes.

Q: Are you going to tell the judge and the people over here a lie?

A: No.

Q: What are you going to tell them?

A: The truth.

Q: The truth.

The Commonwealth's attorney then questioned the child as follows:

Q: You have spoken to Mr. Cosby [defense counsel] earlier today.

A: Yes.

Q: Have you discussed with him what you are going to say?

A: Yes.

Q: You don't want to get him upset; do you?

A: No.

Q: Are you going to tell what Mr. Cosby wants you to say or what is the truth?

A: What's the truth.

The court followed with these questions which we find to be dispositive:

Q: My question to you: Has anybody told you what to say? And your answer was, "Yes." When I asked you who you said your momma's lawyer. Did he tell you what to say?

A: Yes.

Q: That's why I sent the jury out. Did he tell you what to say?

A: Yes.

Q: What did he tell you to say?

A: The truth.

The situation in *Zeezich* is analogous. There the court found that the trial court did not abuse its discretion by finding an eight year old witness competent who stated that her mother told her what to say, which was to tell the truth. The court concluded that the "jury could easily reconcile the two statements as meaning one and the same thing." *Zeezich*, 61 Utah at____, 210 P. at 929. We find the same is true here. There is no evidence that the child was "coached," *see Rogers v. Commonwealth*, 132 Va. 771, 111 S.E. 231 (1922), or that he lacked independent recollection of the events. *See Cross*, 195 Va. 62, 77 S.E.2d 447. Therefore, by excluding the witness on this ground, the court excluded the witness on a matter which affected his credibility, not his competency. Inquiry into matters of credibility are the proper subject for cross-examination.

■ Furthermore, although Durant's son indicated that he did not understand the meaning of an oath, his responses reveal that he understood what it meant to tell the truth. In *Oliver v. United States*, 267 F. 544 (4th Cir. 1920), the court found that the thirteen year old witness was competent even though he testified that he did not understand the nature of an oath. The witness knew that he was expected to tell the truth when sworn to do so. The court observed:

while it is true that the witness stated that he did not understand the nature of an oath, it is doubtless true that the court concluded that his answer related to his inability to give a definition of an oath in more or less technical terms, rather than to his knowledge and realization of its obligation.

267 F. at 547. We find the observation about the child's understanding to be true in this case also. We adopt the reasoning set forth below:

It is generally sufficient in this respect if a witness realizes that it is wrong to falsify, and that if he does so he will be, or is likely to be, punished therefor. The fact that a child cannot define "oath" or state the nature and purpose of an oath does not necessarily disqualify him as a witness; many intelligent adults cannot give such a definition or statement but are competent as witnesses.

81 Am. Jur. 2d *Witnesses* § 89 (1976) (footnotes omitted).

For the foregoing reasons, we hold that the trial court erred in refusing to grant a mistrial when the Commonwealth referred to the defendant's post-arrest, post-*Miranda* silence and in finding that the defendant's seven year old son was not competent to testify. Accordingly, we reverse and remand.

*Reversed and remanded.*

Barrow, J., and Benton, J., concurred.