KEVIN FIDEL ROBINSON

v.

COMMONWEALTH OF VIRGINIA

No. 1373-90-2

Decided March 10, 1992

COUNSEL

Gerald T. Zerkin (Kelly H. Brandt; Robert Godfrey; Gerald T. Zerkin & Associates, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**BRAY, J.**—Kevin Fidel Robinson (defendant) was convicted of robbery and entering a bank armed with a deadly weapon with the intent to commit larceny and was sentenced, in accordance with the jury's verdict, to twenty-five years imprisonment. On appeal, defendant contends that the Commonwealth's Attorney improperly commented on his exercise of his right to remain silent,[1] and the trial court erred by denying his resulting motion for a mistrial. We disagree and affirm.

The record discloses that Thomas Hudson (Hudson), while "turning right to go into the bank," noticed a "man walking along the street with a briefcase under his arm." As he entered the bank moments later, Hudson "looked back out the door" and the same man was "coming up the driveway of . . . the bank's drive-in." Hudson testified that the man then "came through the door with [a] gun" and proceeded to rob the bank. The man was wearing a mask at the time of the robbery, but Hudson recognized "the same clothes" and "the same briefcase in his hands."

Immediately after the robbery, Hudson followed the man, who "didn't have a mask on then," and observed him "getting in the getaway car." At trial, Hudson identified defendant as the robber and Debbie Falden (Falden) as "the lady driving the car."

Another witness had seen defendant "pitch the briefcase" into her front yard before being "picked up" by a car. The police retrieved the briefcase, which contained "some bullets" and $909, the "exact amount of money missing from the bank."

Falden admitted that she drove defendant to the bank and next "saw [him] running down the street," "with a briefcase," and "[s]omeone in a car . . . was like following him." Falden "kept riding around," "found" and "picked up" defendant, who immediately stated, "it didn't work." Falden denied any prior knowledge of defendant's intention to rob the bank.

Following his arrest, defendant made no statement to the police, but testified at trial that he had been out of town on business at the time of the robbery.

---

[1]  U.S. Const. amend. V.

In closing argument, the Commonwealth's Attorney commented to the jury that defense counsel had:

> started talking about Debbie Falden and the fact that she said she would lie to keep from going to prison. . . . [Y]ou really can't judge her by that standard because . . . [e]verything she said here today is after she has been charged. . . . Kevin Robinson stands in different shoes. Because you see, Kevin Robinson stands to go to the penitentiary and everything he said today is the first time and everything he said today determines whether he goes or not, so to suggest —

At that point, defendant made a motion for mistrial, arguing that the Commonwealth's Attorney had improperly commented upon defendant's exercise of his right to remain silent. The trial court overruled defendant's motion.

In *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court considered the use for impeachment purposes of a defendant's silence "at the time of arrest and after receiving *Miranda* warnings." *Id.* at 619. In *Doyle*, the defendants claimed for the first time at trial that they had been framed. *Id.* at 613. The trial court, over objection, permitted the prosecutor to cross-examine the defendants concerning their failure previously to relate this account to police. *Id.* Relying upon *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the use for impeachment purposes of a defendant's silence, following *Miranda* warnings, violates the Due Process Clause of the Fourteenth Amendment. *Doyle*, 426 U.S. at 619. The Court noted that the *Miranda* warnings carry an implicit assurance that a defendant's decision to remain silent "will carry no penalty." *Id.* at 618.

Subsequently, in *Durant v. Commonwealth*, 7 Va. App. 454, 375 S.E.2d 396 (1988), this Court found that references by the Commonwealth "to [Durant's] post-arrest, post-*Miranda* warnings silence both during cross-examination of Durant and in closing argument" violated *Doyle* and required reversal of the conviction. *Id.* at 460, 375 S.E.2d at 398. The Commonwealth had asked Durant "why she did not tell the whole story to the police," and referred during closing argument to Durant's "decision to speak with an attorney rather than telling the police the whole story," both obvious references to her exercise of her constitu-

tional rights. *Id.* at 458, 375 S.E.2d at 398.

Similarly, in *Williams v. Zahradnick*, 632 F.2d 353 (4th Cir. 1980), the Fourth Circuit concluded that *Doyle* was controlling on the issue of whether "the raising of defendant's postarrest silence invaded his constitutional rights."[2] *Id.* at 357, 360. There, the prosecutor asked the defendant "a series of questions concerning why he had not related [his] story to the police." *Id.* at 360. In closing argument, the prosecutor again referred to the defendant's post-arrest silence, commenting, "When did [defendant] come forward with [this story]? Today in Court. Use your common sense." *Id.* at 357. The court determined that these repeated references to the defendant's silence were impermissible under *Doyle.*

The Fourth Circuit again considered prosecutorial comments in the context of *Doyle* in *Gaskins v. McKellar*, 916 F.2d 941 (4th Cir. 1990), *cert. denied*, 500 U.S. 961 (1991). There, the prosecutor stated in closing argument "that he wished to talk to the jury 'about what is not in dispute in this case.' " He then proceeded to discuss "pieces of evidence" which *only* the accused "could have disputed," a subtle reference to the silence of the accused before and during trial. *Id.* at 951. The court found this argument "did not constitute a *Doyle* violation," explaining that the critical inquiry in a *Doyle* analysis "is whether the disputed statement so infected the trial and sentencing with unfairness that the ultimate conviction and sentence constituted a denial of due process." *Id.*

Against this standard, a single comment, which only vaguely and indirectly referenced the defendant's post-arrest silence, does not violate *Doyle*. In both *Durant* and *Williams*, defendants were repeatedly questioned with respect to their failure to relate an exculpatory story to the police prior to trial, conduct which was then argued to the jury. In contrast, the prosecutor in *Gaskins* alluded to the accused's silence only indirectly and in a single remark.

In the instant case, defendant was not cross-examined with respect to his failure to relate any alibi to police. The Commonwealth's Attorney merely argued to the jury that Falden had al-

---

[2] Factors which the court considered material to this determination include: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions. *Williams*, 632 F.2d at 361-62.

ready admitted her participation in the crime and had "been charged," while "everything [defendant] said today is the first time." The jury may not have even related this isolated comment to defendant's post-arrest silence. Clearly, however, it did not "so infect" the trial with "unfairness that the ultimate conviction" constituted a denial of due process. *Gaskins*, 916 F.2d at 951.

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Koontz, C.J., and Elder, J., concurred.