# Richmond

HARRY L. DRINKARD V. COMMONWEALTH OF VIRGINIA
AND
W. E. HICKS V. COMMONWEALTH OF VIRGINIA.

January 17, 1935.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and
Browning, JJ.

The opinion states the case.

*A. S. Hester* and *M. H. Hester,* for the plaintiffs in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

EPES, J., delivered the opinion of the court.

Harry L. Drinkard and W. E. Hicks were jointly indicted for breaking and entering "on the —— day of December," 1933, the storehouse and garage of Willie Cooper, in the city of Lynchburg, with the intent to commit larceny therein, and stealing therefrom a crocheted bedspread of the value of $50, and certain other household articles.

Upon their trial the jury returned separate verdicts as to each of the accused, both of which read: "We the jury

find the defendant guilty as charged in the indictment and fix his punishment at two years in the penitentiary." .

██ The indictment contains only one count, and the verdicts, being general verdicts, find the accused guilty of the major offense charged in the indictment, *i. e.*, housebreaking with intent to commit larceny. *Speers* v. *Com.*, 17 Gratt. (58 Va.) 570, 574; *Butler* v. *Com.*, 81 Va. 159, 162; *Myers* v. *Com.*, 132 Va. 746, 762, 111 S. E. 463.

Each of the defendants moved the court to set aside the verdict against him because the evidence was insufficient to sustain a verdict finding him guilty of housebreaking. The court overruled their motions, and sentenced each of them in accordance with the verdict against him.

The single assignment of error made by each of them is that the court erred in refusing to set aside the verdict against him on that ground.

The evidence is certified in narrative form. So far as it is material the evidence introduced by the Commonwealth (given where it is placed in quotations in the language of the certificate of the evidence) is as follows:

Mrs. Willie Cooper testified "that on Wednesday, she believes the 20th of December, 1933, between * * * 10:30 in the morning and 8 o'clock in the evening, the lock on her garage was broken, the garage entered and the lid of two trunks pried open, from which were stolen the particular hand knitted bedspread in evidence and various other articles of wearing apparel and personal effects."

J. A. Pickett testified "that he runs a bootlegging establishment; * * * that he has known Drinkard and Hicks slightly for some time; that several days before Christmas [1933] Hicks and Drinkard came together into his place; that one of them (he didn't say which) asked him if he wanted to buy a bedspread; that about thirty minutes later they both came back together and Hicks had the bedspread under his arm; that he swapped them a five gallon can of liquor for the bedspread and another small article;[1] that

---

[1] There is no evidence to identify this article as an article which had been stolen from Mrs. Cooper's garage or anywhere else.

they left together with the can of liquor; * * * that the trade was made in the afternoon; that he gave the bedspread to his wife for a Christmas present, * * *; that prior to the date he purchased the bedspread Officer Harvey had informed him of several thefts, and asked him to keep a lookout for bedspread and other articles; that after purchase was made witness's employee, Tuck, told witness that he [Tuck] had told Officer Harvey that he [Pickett] had a bedspread; that Harvey called him on the 'phone and asked him if he had such a spread and if he could see it; and [that] then witness delivered spread to police and informed them how it had been acquired."

Jackie Rogers (a woman) testified "that she did not live with Pickett, but that she visited Mrs. Warren at the establishment [Pickett's] and that she had been visiting there the greater part of the past several years; * * * that she had seen Drinkard and Hicks there frequently; that some time before Christmas [1933], she doesn't know the day, she saw Drinkard and Hicks there together; * * * that Hicks had a box under his arm; * * * that after seeing the box under Hicks' arm she looked in the box in a back room and saw the bedspread in it; that there were others at the house when Drinkard and Hicks were there; that they traded the bedspread to Pickett for a can of whiskey but [she] couldn't say that she was in the room when the trade was made and recalled no details of the conversation in regard to the trade."

The only other witness for the Commonwealth was Officer Harvey, who testified as to the circumstances under which Pickett delivered the bedspread to the police and told where and how he had gotten it from Drinkard and Hicks. His testimony agrees with that of Pickett on these points.

Hicks and Drinkard each testified that he had never been on Mrs. Cooper's premises, and had never seen the bedspread introduced in evidence until it was exhibited at his examination on this charge in the police court; and that though he knew Pickett well and had been to his bootlegging establishment many times, he was not at his place on

December 20, 1933, or at any time between that time and Christmas. Both testified that they left Lynchburg together about 2 a. m. on December 20th, went to Franklin county, and from there to Pittsylvania county, where they were arrested about noon on December 20th and Hicks was put in jail in Chatham.

Drinkard does not account for his whereabouts from the time he was arrested until after Christmas, other than by his categorical statement that he was not in Lynchburg from 2 a. m. on December 20th until after Christmas. Hicks testified that he remained in jail in Chatham from about noon on December 20th until Christmas eve, when his attorney, Mr. Anderson, a Lynchburg attorney who represented Hicks and Drinkard at this trial, came to Chatham with a bondsman and bailed him out.

Mr. Anderson took the witness stand and corroborated Hicks' statement that on Christmas Eve he went to Chatham and procured Hicks' release on bail, and said "that he thought Hicks had been in jail for three or four days for his friends had been trying to get him to go to Chatham to get him out for that long." He further said that the reason the jailor in Chatham had not been summoned to prove when Hicks was put in jail was that he (Anderson) had been and was still sick, and had not attended to having him summoned.

In support of his position that the court erred in refusing to set aside the verdict as to him each of the accused makes two contentions.

(1) They contend that the testimony of Hicks and Drinkard, if believed, proves that they were not in Lynchburg at the time Mrs. Cooper testified her garage was broken open, and could not have been guilty of breaking and entering it; and that the jury was not warranted in disbelieving or disregarding their testimony on this point.

█ This contention is not well made. The testimony of Hicks and Drinkard that they were not in Lynchburg from 2 a. m. on December 20th until Christmas Eve (or in the case of Drinkard until after Christmas) was contradicted

by the testimony of the witnesses for the Commonwealth. If Mrs. Cooper's and Pickett's testimony is to be believed, neither Hicks nor Drinkard could have told the truth as to his whereabouts during this period. It is evident that the jury found that the Commonwealth's witnesses were, and Hicks and Drinkard were not telling the truth; and for the purposes of this review we must accept this as being a fact established.

In *Spratley* v. *Com.*, 154 Va. 854, 152 S. E. 362, and *Messer* v. *Com.*, 145 Va. 838, 133 S. E. 761 (on which the plaintiffs in error rely as supporting this contention) the testimony of the accused which was disregarded by the jury was uncontradicted and not inconsistent with any other evidence in the case. What was said in those cases with reference to the disregard by the jury of the testimony of an accused, or of a witness for the accused, is not applicable to a case such as this.

(2) They contend that, even if it be accepted as established that Pickett's testimony is true and that they have testified falsely in an effort to rebut it, yet the evidence is not sufficient to sustain a verdict finding them, or either of them, guilty of breaking and entering Mrs. Cooper's garage with intent to commit larceny therein.

Drinkard's contention is twofold. (a) He contends that the evidence is insufficient to show beyond a reasonable doubt that he was either in the sole exclusive possession of the bedspread, or that he and Hicks were jointly in the exclusive possession thereof. (b) If it can be said that the evidence is sufficient to show beyond a reasonable doubt that he and Hicks were jointly in the unexplained exclusive possession of the bedspread, this, as a matter of law, is insufficient to sustain a verdict finding him guilty of breaking and entering Mrs. Cooper's garage with an intent to commit larceny therein.

Drinkard's first contention is well made. The evidence raises a strong suspicion that the bedspread was in the joint possession of Drinkard and Hicks, but it is not sufficient to warrant an inference beyond a reasonable doubt

that he at any time was consciously asserting any claim of ownership to the bedspread or consciously had, exercised or asserted any possession thereof or dominion thereover. "As laid down by 2 Wharton's Cr. Ev. (10th Ed.) 1509: 'The possession must be personal, must be recent, must be unexplained, and must involve a distinct and conscious assertion of property by the defendant.' " *Tyler* v. *Com.*, 120 Va. 868, 873, 91 S. E. 171, 172.

Hicks' contention is that the most that the evidence can be said to do is to establish that he was in the unexplained exclusive possession (either sole or joint with Drinkard) of property recently stolen from Mrs. Cooper's garage; and that, as a matter of law, this is insufficient to sustain a verdict finding him guilty of breaking and entering her garage with intent to commit larceny therein.

In support of this contention he relies upon statements in some of the Virginia cases to this effect. "The law in Virginia is well settled that the possession of stolen goods is of *itself* not even *prima facie* evidence of housebreaking or of burglary." (Italics ours.) *Tyler* v. *Com.*, 120 Va. 868, 870, 91 S. E. 171, 172; *Taliaferro* v. *Com.*, 77 Va. 411, 413; *Walker* v. *Com.*, 28 Gratt. (69 Va.) 969, 971; *Gravely* v. *Com.*, 86 Va. 396, 400, 10 S. E. 431; *Porterfield* v. *Com.*, 91 Va. 801, 806, 22 S. E. 352; *Stallard* v. *Com.*, 130 Va. 769, 775, 107 S. E. 722.

██ It is unquestionably the law that in the absence of evidence to show that the house from which the goods were stolen was broken and entered at the same time the goods were stolen and as a part of the same transaction, the unexplained exclusive possession of recently stolen goods is not sufficient, standing alone, to establish that the accused broke and entered a house in which they were with intent to commit larceny therein and stole the goods therefrom. This is what the court meant by what it said in the cases cited in the paragraph next above.

██ As said in *Myers* v. *Com.*, 132 Va. 746, 761, 111 S. E. 463, 468, "there is a *corpus delicti* to be proved before any inference of guilt can arise from the possession of the fruits

of the crime." Where the charge is merely larceny, the *corpus delicti* is the larceny of the goods. Where the charge is breaking and entering with intent to commit larceny, the *corpus delicti* is the breaking and entering with that intent. Under neither charge will the possession of goods give rise to an inference of guilt until the *corpus delicti* charged be proved by other evidence.

■ But when evidence has been introduced, which, if believed, establishes that a house has been broken and entered and goods stolen therefrom, and warrants an inference beyond a reasonable doubt that the breaking and entering and the larceny of the goods were committed at the same time, by the same person or persons, as a part of the same transaction, upon principle and authority, the exclusive possession of the stolen goods shortly thereafter, unexplained or falsely denied, has the same efficiency to give rise to an inference that the possessor is guilty of the breaking and entering as to an inference that he is guilty of the larceny. In such a case the rules, with reference to whether the possession proven is sufficient to warrant an inference beyond a reasonable doubt that the possessor is guilty of the breaking and entering with intent to commit larceny, are practically the same as those applying with reference to whether it is sufficient to warrant an inference beyond a reasonable doubt that the possessor is guilty of the larceny. *Branch* v. *Com.*, 100 Va. 837, 839, 41 S. E. 862; *Myers* v. *Com.*, 132 Va. 746, 762, *et seq.*, 111 S. E. 463; *Knickerbocker* v. *People*, 43 N. Y. 177.[2]

■ The evidence warranted an inference beyond a

[2] See, also, *Tyra* v. *State*, 17 Ala. App. 92, 82 So. 631; *Cline* v. *State*, 21 Ariz. 554, 192 P. 1071; *Gunter* v. *State*, 79 Ark. 432, 96 S. W. 181, 116 Am. St. Rep. 85; *State* v. *Wright* (Del. Ct. of Gen. Sess.), 6 Pennewill (22 Del.) 251, 66 Atl. 364; *Robertson* v. *State*, 40 Fla. 509, 24 So. 474, 476; *Holliday* v. *State*, 23 Ga. App. 400, 98 S. E. 386; *People* v. *Weisman*, 296 Ill. 156, 129 N. E. 689; *State* v. *Fortune*, 196 Iowa 995, 195 N. W. 740; *Hutchcraft* v. *Com.*, 195 Ky. 591, 242 S. W. 580; *Com.* v. *McGorty*, 114 Mass. 299; *Cook* v. *State* (Miss.), 28 So. 833; *State* v. *Dale*, 141 Mo. 284, 42 S. W. 722, 64 Am. St. Rep. 513; *Richardson* v. *State*, 84 Tex. Cr. Rep. 38, 204 S. W. 638; *Smith* v. *State*, 85 Tex. Cr. Rep. 355, 212 S. W. 660; 4 R. C. L., p. 440, Burglary, section 34; 9 C. J., p. 1082, Burglary, section 145, and cases cited in note 74.

reasonable doubt by the jury that Hicks was in the exclusive possession of the bedspread introduced in evidence, which had been recently stolen, on December 20, 1933, from a garage belonging to Mrs. Cooper, and a finding not only that he had failed to give any credible account of how he came into the possession of it, but also that he had falsely denied that he had been in possession of it and falsely testified that he was not in Lynchburg either at the time the spread was stolen or at the time Pickett testified he brought it to his place and swapped it for a can of whiskey. Under the well established rule pertaining in Virginia this was sufficient to sustain a verdict finding Hicks guilty of the larceny of the spread. But, independent of any evidence with reference to Hicks' possession of the spread, the evidence was sufficient to warrant an inference beyond any reasonable doubt that the garage of Mrs. Cooper was broken into and entered with intent to commit larceny therein at the same time, as a part of the same transaction, and by the same person or persons who stole the spread. This being true, it is practically impossible to escape the conclusion that, as the evidence is sufficient to sustain a verdict finding Hicks guilty of the larceny of the spread, it is sufficient to sustain a verdict finding him guilty of having broken and entered the garage with intent to commit larceny therein.

The judgment against Hicks will be affirmed. The judgment against Drinkard will be reversed, and the cause remanded for a new trial to be had, should the Commonwealth be advised that it has further evidence to sustain the charge against him.

*Judgment against Hicks affirmed.*
*Judgment against Drinkard reversed.*