### Richmond

LINDA AILENE BROWN

V.

COMMONWEALTH OF VIRGINIA

September 9, 1983.

Record No. 821822.

Present: All the Justices.

*William G. Boice (Tidey & Boice*, on brief), for appellant.
*Robert Q. Harris, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Linda Ailene Brown was tried by a jury on an indictment charging that she stole a magnetic sensor valued at less than $200

after having been sentenced previously "for six separate convictions of larceny or an offense deemed to be larceny."[1] Finding her guilty as charged, the jury fixed her punishment at confinement in the State penitentiary for a period of five years;[2] the trial court entered judgment on the verdict.

Prior to her arraignment, Brown's counsel, offering to stipulate to her previous convictions, moved that she not be arraigned before the jury as one who had been convicted previously of similar crimes and that no reference to the previous convictions be made unless her guilt in the present case had first been determined. The trial court denied the motion. Brown contends that the court committed reversible error in so ruling and in admitting in evidence, over her objection, certain price tags found in her possession at the time of her arrest. We do not agree with either contention.

Before considering the evidence, we dispose of the preliminary question concerning Brown's previous convictions. Without citing authority, Brown argues that she was denied due process because the jury was informed of her six prior petit larceny convictions at arraignment and again during trial.

In *Commonwealth* v. *Ellett*, 174 Va. 403, 409, 413, 4 S.E.2d 762, 764, 766 (1939), we said that to make the accused subject, under a repeating-offender statute, to a heavier penalty for a second conviction for driving under the influence of intoxicants, the previous conviction must be alleged in the indictment so that the accused will have notice that enhanced punishment based on the prior offense will be sought. *See also Keeney* v. *Commonwealth*, 147 Va. 678, 684-85, 137 S.E. 478, 480-81 (1927).

In *Calfee* v. *Commonwealth*, 215 Va. 253, 254-55, 208 S.E.2d 740, 741 (1974), involving a later version of the statute discussed in *Ellett*, we cited *Ellett* with approval and upheld the admission of evidence of a previous conviction where the jury was instructed

---

[1] Code § 19.2-297 provides:

When a person is convicted of petit larceny, and it is alleged in the indictment on which he is convicted, and admitted, or found by the jury or judge before whom he is tried, that he has been before sentenced in the United States for any larceny or any offense deemed to be larceny by the law of the sentencing jurisdiction, he shall be confined in jail not less than thirty days nor more than twelve months; and for a third, or any subsequent offense, he shall be guilty of a Class 6 felony.

[2] Code § 18.2-10(f) authorizes punishment upon conviction of a Class 6 felony at imprisonment of not less than one year nor more than five years, or confinement in jail for not more than twelve months and a fine of not more than $1000, either or both.

that this evidence should not be considered in determining guilt or innocence but only in fixing punishment if guilt were proven.

Code § 19.2-297 explicitly requires that it be alleged in the indictment and either admitted or proved that the accused has previously been sentenced for larceny in order for the enhanced punishment provisions to become applicable. In the present case, the trial court exercised commendable care to protect Brown by stating orally to the jurors on *voir dire* that they should not consider the previous convictions in determining her guilt or innocence of the offense charged. Furthermore, as in *Calfee*, a cautionary instruction to the same effect was given to the jury after the presentation of evidence had been completed.

█ Brown sought a bifurcated trial, but there is no statutory authorization for such a procedure in this case. Bifurcated trials have been provided by statute only in capital murder cases, Code § 19.2-264.3, and in certain traffic cases, Code § 46.1-347.2.[3] There may be sound arguments for the extension of such trials to other offenses in Virginia, but these arguments should be addressed to the General Assembly. Due process does not require that an accused be given a bifurcated trial when he is charged under a statute authorizing enhanced punishment for repeating offenders. *Spencer* v. *Texas*, 385 U.S. 554, 557, 567-69 (1967).

We turn now to the evidence, all of which was presented by the Commonwealth. About 5:30 p.m. on April 10, 1982, Brenda Conklin was on duty as a dressing room attendant at Casual Corner, a women's clothing store. She testified that Brown took four garments, including a red Pierre Cardin suit, into a booth to try on. Five or ten minutes later, Brown returned the garments. Shortly thereafter, Conklin heard the store's inventory sensor alarm sound at the front of the shop. Conklin explained that affixed to each garment in Casual Corner was a plastic "sensormatic" device that would activate a warning buzzer if passed through sensors located on either side of the entrance. When an article was sold to a customer, a store employee would use a special machine to remove the warning device without damaging the merchandise.

---

[3] We have remanded for a new trial on the issue of punishment alone in certain cases under a narrowly defined exception to the unitary-trial rule. *See, e.g., Snider* v. *Cox*, 212 Va. 13, 181 S.E.2d 617 (1971); *Hodges* v. *Commonwealth*, 213 Va. 316, 191 S.E.2d 794 (1972); *Huggins* v. *Commonwealth*, 213 Va. 327, 191 S.E.2d 734 (1972). *Cf. LeMelle* v. *Commonwealth*, 225 Va. 322, 302 S.E.2d 38 (1983).

Sylvia Dale, an assistant manager, heard the buzzer sound. She found Brown leaving the store and asked her to come back inside. The buzzer sounded again when Brown moved past the sensors. Dale removed Brown's coat and passed it through the sensors at the entrance but the alarm did not sound. In a pocket of the coat, however, Dale found pieces of plastic which, it was stipulated, were from two sensormatic devices. The value of a new sensor, according to Dale, was $2.50.

Another assistant manager, Debra Williams, testified that she saw Brown put her left hand into the pocket of her coat as the coat was being removed by Dale. Brown appeared to conceal something in that hand as she held it behind her back. Brown backed away from Dale and sat on a small display desk. When Brown stood up again, Williams observed pieces of a broken sensor on the desk; these pieces had not been there before.

Officer M. V. Counts, who arrested Brown, testified that Brown initially told him she carried no identification, then gave him several names, two birthdates and three social security numbers at the store and six names and other birthdates and social security numbers at the police station. Brown told Counts that she had dropped her cigarette case in the dressing room booth and when she stooped to retrieve it, she also picked up some pieces of broken plastic which she put in her pocket. Conklin testified, however, that she had examined the booth for trash and hangers about 15 minutes before Brown used it, and again after the alarm went off, and found nothing. She also said no one else had used the booth between the time she checked it and the time Brown entered it.

Soon after the alarm sounded, the store manager directed Conklin to collect the garments taken to the dressing room booth by Brown; included was the red Pierre Cardin suit, from which the sensormatic device was missing. Conklin found a hole in the seam of the jacket where the sensor ordinarily would have been attached. The suit, identified by Conklin, was introduced as an exhibit. Conklin said to her knowledge a garment had never been damaged when the sensormatic device was removed by the special machine used by the store for that purpose.

Officer Counts testified that when he searched Brown he found in her cigarette case a number of three-part price tags which Brown said she "just collected." Over Brown's objection, copies of some of the price tags, labelled "La Vogue," were introduced in evidence. The Casual Corner manager, who had formerly worked

for La Vogue, another women's clothing store, identified the tags as the same type as those used in the La Vogue store located nearby. The witness explained that at Casual Corner similar three-part tickets were used for inventory control: the bottom segment was routinely removed at the time of sale, the middle segment was removed if the article was returned, and the top segment would be removed by the customer after the purchase. She said one of these inventory tags was affixed to the Pierre Cardin suit which Brown tried on.

Brown says that the three-part tickets were inadmissible because they were not material or relevant to the offense for which she was being tried and they suggested that she had committed other crimes. The trial court admitted the tickets as evidence of "a scheme of stealing clothes" and as proof of Brown's intent to steal.

■ Evidence of other crimes, although generally inadmissible, may be admitted "where the other crimes constitute a part of the general scheme of which the crime charged is a part." *Kirkpatrick* v. *Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970), *quoted with approval in Dorantes* v. *Commonwealth*, 222 Va. 383, 385, 281 S.E.2d 823, 824 (1981). *See also McCormick's Handbook of the Law of Evidence* § 190, at 448-49 (E. Cleary 2d ed. 1972). Proof of other criminal acts is also admissible to show that the defendant's conduct was intentional. *Id.* at 450; *Brooks* v. *Commonwealth*, 220 Va. 405, 406-07, 258 S.E.2d 504, 506 (1979); *Kirkpatrick, supra*, 211 Va. at 272, 176 S.E.2d at 805.

Although the tickets found in Brown's possession are not per se evidence of other crimes, the jury reasonably could infer that they were obtained by Brown for the purpose of facilitating a plan or scheme for the theft of merchandise, that she removed the sensors from garments in Casual Corner for the same purpose, and, thus, that she intended to take the devices from the store. We conclude that the trial court did not err in admitting the tickets in evidence.

Finding no error in the rulings of the trial court, we will affirm the judgment.

*Affirmed.*