# Norfolk

## LARABEE BRYAN FERRELL

v.

## COMMONWEALTH OF VIRGINIA

No. 0157-88-1

Decided December 11, 1990

382

COUNSEL

Randall D. Smith (Bouchard & Smith, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Larabee Bryan Ferrell (appellant) was indicted, tried by jury in the Circuit Court of the City of Chesapeake (trial court), and convicted of (1) breaking and entering the storehouse of Bill Elliott's Used Autos on or about November 9, 1985 and November 11, 1985; (2) breaking and entering the storehouse of Greenleaf Auto on or about December 4, 1985; (3) stealing a 1973 Cadillac automobile on December 4, 1985, which was owned by Greenleaf Auto; (4) breaking and entering the storehouse of Yale Materials of Virginia (Sydnor division) on or about December 10, 1985 and December 11, 1985; (5) stealing, on or about December 10, 1985 and December 11, 1985, from the premises of Sydnor, various items including a television, briefcase, tool box, tools, solar calculator and $45 in United States currency belonging to Tom Ricks of Sydnor Industrial Services; and (6) breaking and entering the storehouse of Cavalier Ford on December 29, 1985. He appeals from judgments entered on each jury verdict.

Prior to his trial, appellant moved the trial court to grant him separate trials on each of the breaking and entering charges. His motion was overruled and all charges were tried together before the same jury. Appellant contends (1) the trial court erroneously refused to sever the trials on the four breaking and entering indictments; (2) the trial court, in violation of the Fifth Amendment to the Constitution of the United States, erroneously permitted a police officer to relate several of the preliminary questions he had asked appellant after he had informed appellant of his *Miranda*

rights; and (3) the trial court erroneously permitted the Commonwealth to introduce a list of items found in the stolen vehicle in which appellant was arrested, including several identification cards and license plates which belonged to other people.

Upon familiar principles, we view the evidence on appeal in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Wright v. Commonwealth*, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982). The record discloses that all of the break-ins were made into commercial business storehouses. Three of the four entries involved businesses engaged in sales and services of automobiles. The fourth was engaged in sales and services of industrial supplies.

On January 4, 1986, at approximately 3:00 a.m., appellant was arrested in Prince George County, Maryland, where he was charged by Laurel City police officer M. W. Bond[1] with driving under the influence of alcohol. At that time, appellant was driving the 1973 Cadillac which had been stolen in Chesapeake from Greenleaf Auto. Bond first noticed the car because it had no rear license plate; however, a plate on the front bore Virginia numbers JWM-271. Bond decided to investigate. When he first activated his siren and lights, appellant continued to drive away from Bond until six blocks later, where he stopped when he found himself entering a one-way street from the wrong direction. As Bond approached the car, he observed numerous items of property in its back seat. There were two passengers in the front seat of the car, both of whom Bond recognized as local residents. As Bond neared the Cadillac he smelled the odor of alcohol and asked appellant to get out of the car.

When appellant was asked to produce some identification, he handed Bond a woman's (Patricia Gneville) driver's license. Bond looked at the license and asked appellant "what [his] name was." Appellant responded that it was "Willie Coke."[2] At this point, Bond ran a computer check on the license plate and found it had been stolen from Patricia Ann Fitchette. Bond then ran the Cadil-

---

[1] Subsequent to making this arrest, Officer Bond left that police depratment to enter private business in Maryland where he was employed at the time of appellant's breaking and entering trial.

[2] At the police station, appellant continued to falsely state his name, birth date and social security number. When told he could be charged with giving the police a false name, appellant corrected the misinformation he had given.

lac identification number through the computer and discovered that the car had been stolen from Greenleaf Auto in Chesapeake. Appellant was arrested and charged with driving while under the influence of alcohol, transported to the police station by another patrol officer and advised of his *Miranda* rights. Having determined that appellant was in possession and control of the stolen Cadillac, Bond twice asked him where he had obtained the car. Appellant responded with two questions: "Well, what are you talking about?" and, "Why do you want to know?"

Bond made an inventory of the contents of the Cadillac prior to its impoundment. The inventory revealed that in appellant's possession and/or under his control were the stolen Cadillac, personal checks, a Thundersound equalizer, bags of assorted keys, a stereo cassette, an 8-track adapter, various papers, and Virginia license plates with numbers FWB-490 and FWN-271, all taken from Greenleaf Auto; a military business ID card with number 17518, a calculator, one briefcase, two window-lock keys, and three Yale Materials with Tom Ricks' name on it, all except the ID card taken from the premises of Sydnor Industries; and ten sets of keys taken from Cavalier Ford, which were removed from appellant's suitcase in which a Polaroid picture of appellant was also found.

The inventory included the license plate stolen from Fitchette, driver's license of Gneville, a number of billfolds belonging to other people, and various items of female jewelry. None of these items were stolen from the Chesapeake business victims named in the indictments. The list was introduced into evidence to rebut appellant's assertions that he was unaware that the Cadillac and items found in it had been stolen.

At the same time that the items shown on the inventory list were stolen from Bill Elliott's, a 1979 Ford Thunderbird belonging to that company was also stolen from its premises. In addition, at the time the ten sets of keys were stolen from Cavalier Ford, a Ford van was also stolen from its premises. These automobiles apparently were abandoned by the thief and had been returned to the owners prior to appellant's arrest in Maryland.

Appellant testified on his own behalf. He denied that he committed the break-ins, and stated that he had bought the Cadillac from a man named James, whom he had met at a local bar. He did not produce James as a witness at trial. On cross-examination,

appellant stated that he was aware of the presence of the calculator and some jewelry on a "plaque" that was in the glove compartment but denied that there was a bag containing jewels. He specifically denied any knowledge of Patricia Gneville's driver's license, the identification card of Thomas Ricks, the armed forces' ID card of David Dunn, and the sets of automobile and clock keys. He further denied that he had given Gneville's card to the police officer. Generally, he denied knowledge that the many items found either in the back seat or trunk of the Cadillac were stolen, asserting that they must have belonged to "James." He admitted that prior to the trial he had told no one that the stolen items belonged to James, and he did not claim that he told Officer Bond that he had purchased the vehicle from James.

Officer Bond was recalled by the Commonwealth to rebut appellant's denial that he gave Gneville's driver's license to Bond, to show that there was a bag containing a substantial amount of jewelry, and for the purpose of introducing the inventory list to show appellant's knowledge of the stolen items which were in his possession or under his control.

Appellant asserts that the trial court committed reversible error by refusing to grant his motion to sever the trials on the four separate indictments charging him with violation of Code § 18.2-91 (breaking and entering). He concedes that the trial of the larceny counts arising out of two breaking and entering indictments properly could be tried at the same time as the related burglary charge if the breaking and entering trials were severed. He argues that Rule 3A:6(b), *Godwin v. Commonwealth*, 6 Va. App. 118, 367 S.E.2d 520 (1988), and *Cook v. Commonwealth*, 7 Va. App. 225, 372 S.E.2d 780 (1988), give him the absolute right to separate trials.

Because appellant relies heavily on the majority opinion in *Godwin*, a threshold question we must decide is the effect, if any, that opinion has on the matter before us. Initially, we note that the dissent in *Godwin* opined that the issue the Court was required to decide was not as stated by the majority but was whether the trial court abused its discretionary power when it found the existence of a common scheme or plan and denied the defendant's motion to sever. *Godwin*, 6 Va. App. at 125, 367 S.E.2d at 524 (Baker, J., dissenting). The majority in *Godwin* did not address that issue. Subsequent to *Godwin*, *Cheng v. Common-*

*wealth*, 240 Va. 26, 393 S.E.2d 599 (1990), was decided. A threshold issue in *Cheng* involved Rules 3A:6(b) and 3A:10(b), and the effect of the phrase "parts of a common scheme or plan."

> A court may direct that an accused be tried at one time for all offenses pending against him if (1) "justice does not require separate trials," Rule 3A:10(b), and (2) "the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan," Rule 3A:6(b). Whether different offenses should be tried separately is a matter that rests within the sound discretion of a trial court. *Fincher v. Commonwealth*, 212 Va. 552, 553, 186 S.E.2d 75, 76, *cert. denied*, 409 U.S. 913 (1972); *Bryant v. Commonwealth*, 189 Va. 310, 315, 53 S.E.2d 54, 46 (1949). Thus, a trial court's ruling on the matter will not be reversed absent a showing that the court abused it discretion. *Fincher*, 212 Va. at 553, 186 S.E.2d at 76.

*Id.* at 33-34, 393 S.E.2d at 603.[3] As in *Cheng*, the primary issue before us is whether the record discloses that the trial court abused its discretion in ordering that the indictments be consolidated for trial. We find that, pursuant to the holding in *Cheng*, the record before us does not disclose an abuse of the trial court's discretionary power.

In *Fincher v. Commonwealth*, 212 Va. 552, 186 S.E.2d 75 (1972), the Supreme Court held that the trial court did not abuse its discretion in refusing to sever the offenses for trial and said:

> From the standpoint of economy of the time of the court, jurors, and witnesses, there was good reason for consolidation. The offenses charged against the defendant arose out of a series of related and connected events. Much the same evidence would have been submitted to the jury in separate trials. The Commonwealth, if consolidation had not been ordered, would have been required twice to secure the presence of a material out-of-state witness.

---

[3] Immediately following this discussion of the Rules, Justice Stephenson added that evidence of other crimes is admissible "where the motive, intent or knowledge of the accused is involved." We discuss that issue later in this opinion.

On the other hand, the defendant has not shown that the consolidation confounded him in his defense or adversely affected his substantive rights. Nor has he shown that trial of the consolidated indictments confused the jury.

*Id.* at 553, 186 S.E.2d at 76. Factually, *Fincher*[4] and the case before us bear a strong resemblance. There is nothing indicated by this record that appellant's defense to either charge would have been altered in any respect if he had been granted separate trials. As in *Fincher*, the offenses arose out of a series of related and connected events; most of the same evidence would have been submitted to the jury by both the Commonwealth and defense in separate trials; and if severance had been ordered the Commonwealth would have been required on at least four different dates to secure the presence of an out-of-state witness, former Officer Bond, who was at the time of trial in private business in Maryland. As noted in *Fincher*, appellant has not shown that consolidation confounded him in his defense, confused the jury or adversely affected his substantive rights.

Citing *Sutphin v. Commonwealth*, 1 Va. App. 241, 337 S.E.2d 897 (1985), and *Cook v. Commonwealth*, 7 Va. App. 225, 372 S.E.2d 780 (1988), appellant further contends that Rule 3A:6(b) bars consolidation because the record fails to show that the properly admitted evidence proves that his acts constituted "parts of a common scheme or plan." We disagree. Several Court of Appeals cases, including *Godwin*, have rigidly applied the "signature" theory of *Sutphin*. The signature theory, insofar as it requires that the crimes be "carbon copies" of each other, was rejected by the Supreme Court of Virginia in *Spencer v. Commonwealth*, 240 Va. 78, 393 S.E.2d 609, *cert. denied*, 111 S. Ct. 281 (1990). In *Spencer*, the Court said "evidence of other crimes, to qualify for admission as proof of *modus operandi*,[5] need not bear such an exact resemblance to the crime on trial as to constitute a 'signature' . . . it is sufficient if the other crimes bear 'a singular strong resemblance to the pattern of the offense charged.' " *Id.* at 90, 393 S.E.2d at 616. The question of the cir-

---

[4] Rules 3A:6(b) and 3A:10(b) became effective January 1, 1972. The *Fincher* decision was released a short while thereafter.

[5] *Modus operandi* is the method by which the crime is planned and carried out. Where more than one crime is involved it is but part of the common scheme or plan used to commit the crimes. The differences, if any, is without a distinction.

cumstances justifying the admission of evidence concerning other crimes has been a troubling one. *Id.* at 89, 393 S.E.2d at 616. While the oft repeated general rule is that evidence of other crimes is inadmissible because of the probable prejudice to the defendant, there are a number of well recognized exceptions to that general rule. In fact, it has been said "that there are so many exceptions to the rule that it is difficult to determine which is more extensive — the rule or its acknowledged exceptions." 29 Am. Jur. 2d *Evidence* § 321 (1967); *see also Evans v. Commonwealth*, 222 Va. 766, 773, 284 S.E.2d 816, 820 (1981), *cert. denied*, 455 U.S. 1038 (1982).

 One of these exceptions may be illustrated by the case before us. In Virginia, upon proof of breaking and entering and a theft of goods, if the evidence warrants an inference that the breaking and entering and the theft were committed at the same time by the same person as a part of the same transaction, the exclusive possession of stolen goods shortly thereafter gives rise to an inference that the possessor is guilty of the breaking and entering. *Drinkard v. Commonwealth*, 163 Va. 1074, 1083, 178 S.E. 25, 28 (1935). However, the evidence must reveal that the accused was *consciously* asserting at least a possessory interest in or exercising dominion over the stolen property. *Best v. Commonwealth*, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981). Thus, here, proof of knowledge that the goods were stolen is an essential element which must be proved by the prosecution because it relied on the inference to prove guilt of the break-in. *Lewis v. Commonwealth*, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983). Whenever guilty knowledge is an essential element of the offense charged, evidence is admissible which tends to establish that knowledge, notwithstanding that it proves or tends to prove an offense other than that charged. 29 Am. Jur. 2d *Evidence* § 323 (1967). In such cases the general rule "must yield to what has come to be known as the 'guilty knowledge exception.'" *Lewis*, 225 Va. at 502, 303 S.E.2d at 893. Moreover, "if the evidence of other conduct is connected with the present offense, or tends to prove any element or fact in issue at trial, it should be admitted, whether or not it tends to show the defendant guilty of another crime." *Scott v. Commonwealth*, 228 Va. 519, 527, 323 S.E.2d 572, 577 (1984). Every fact, however remote or insignificant, that tends to establish a probability or improbability (e.g., appellant's defense of lack of knowledge) of a fact in issue is admissible. *Spencer*, 240 Va. at 90, 393 S.E.2d at 616; *see also Brown v. Commonwealth*, 226 Va.

56, 61, 307 S.E.2d 239, 242 (1983) (where the Court held that in a prosecution for stealing clothes from one store it was not error to show that the defendant had in her possession clothing from other stores that had the price and size tickets attached).[6] Here, the evidence admitted at trial was clearly admissible to rebut appellant's denial of knowledge that the property found in his possession and under his control was stolen.

> Even where another crime is not inextricably linked with the offense on trial, it may nevertheless be proved if it shows the conduct and feeling of the accused toward his victim, his motive, intent, plan or scheme, or any other relevant element of the offense on trial.

*Scott*, 228 Va. at 527, 323 S.E.2d at 577.

The test for admissibility of other crimes and, therefore, for determining whether the evidence is sufficient to show acts which constitute parts of a common scheme, plan or *modus operandi* is fully discussed in *Spencer*.

> The court's use of the "signature" homology was evidently based upon the Court of Appeals' decision in *Sutphin v. Commonwealth*, 1 Va. App. 241, 246-47, 337 S.E.2d 897, 900 (1985). The term is a useful one if it is understood only in the sense of requiring a distinctive *modus operandi*, such that the evidence of other crimes so resembles the pattern of the offense charged as to raise the probability of a common perpetrator. However, the term "signature" can also be misunderstood to require that evidence of other crimes may not be admitted unless they are virtual carbon copies of the case on trial. That, in our view, is an unwarranted restriction of the *modus operandi* exception.

> We adopt the standard articulated by the Seventh Circuit in *United States v. Hudson*, 884 F.2d 1016 (7th Cir. 1989): evidence of other crimes, to qualify for admission as proof of *modus operandi*, need not bear such an exact resemblance to

---

[6] In admitting evidence of other thefts, the *Brown* Court noted that evidence "of other crimes, although generally inadmissible, may be admitted 'where the other crimes constitute part of the general scheme of which the crime charged is a part.'" *Brown*, 226 Va. at 61, 307 S.E.2d at 242.

the crime on trial as to constitute a "signature." Rather, it is sufficient if the other crimes bear "a singular strong resemblance to the pattern of the offense charged." 884 F.2d at 1021 (quoting *United States v. Shackleford*, 738 F.2d 776, 783 (7th Cir. 1984)). That test is met where the other incidents are "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof," *id.*, thus tending to establish the probability of a common perpetrator.

Ultimately, the question whether to admit evidence of other crimes involves the same considerations as any other circumstantial evidence. "Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted." *Harrell v. Woodson*, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987) (citation omitted). "Other crimes" evidence bearing sufficient marks of similarity to the case on trial to establish the probability of a common perpetrator is, therefore, usually relevant. The question remains, however, whether it is "otherwise admissible." That question requires the trial court to weigh its probative value against its prejudicial effect. "Whenever the legitimate probative value outweighs the incidental prejudice to the accused, evidence of prior offenses, if otherwise competent, is admissible." *Lewis v. Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983).

The responsibility for balancing the competing consideration of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse. *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

The other crimes presented to the jury in the present case were not carbon copies of the crimes on trial. Nevertheless, the similarities between the offenses, particularly the indications of a common *modus operandi* and the scientific evidence that the defendant was the common criminal agent, strongly support the trial court's ruling. Although there was undoubtedly a prejudicial effect upon the defendant, we cannot say that the trial court abused its discretion in ruling that the prejudicial effect was outweighed by the probative value

of that evidence.

240 Va. at 89-90, 393 S.E.2d at 616-17 (footnote omitted); *see also Cheng*, 240 Va. at 34, 393 S.E.2d at 603.

The evidence presented in support of the indictments here discloses remarkably similar and continuing acts by appellant. All the offenses occurred in the city of Chesapeake between November 9, 1985 and December 29, 1985. On December 4, 1985, appellant stole the Cadillac which he was driving in Maryland when he was apprehended. The stolen vehicle was filled with the fruits of the four break-in charges, as well as items of others which were automotive oriented. Connecting and similar facts found in this record are that appellant broke to enter; he concentrated on industries whose businesses were sales and services, three of the four being engaged in the automobile business; from each of the automobile dealers a car was taken; he stole automobiles and sets of keys to other automobiles; he stole dealer license tags and metal license plates; he had in his possession stolen license plates of others and their operator's licenses, wallets, and identification cards, all of which could reasonably be inferred to be parts of a common scheme or plan to commit the offenses with which he was charged. Where the accused's acts constitute parts of a common scheme or plan to commit the offenses with which he is charged, Rules 3A:6(b) and 3A:10(b) empower the trial court to order that the indictments be consolidated in a single trial, if justice does not require separate trials. Because evidence of the source of the fruits of various thefts would be admissible in separate trials to show "guilty knowledge," appellant was not prejudiced by the consolidation. *Cook*, 7 Va. App. at 230, 372 S.E.2d at 783; *Foster v. Commonwealth*, 6 Va. App. 313, 323, 369 S.E.2d 688, 694 (1988); *see also Fincher*, 212 Va. at 552, 186 S.E.2d at 76. We find that justice did not require that appellant be granted separate trials, and that the trial court did not abuse its discretion in ordering that the cases be consolidated for trial.

We further find that the inventory list included items that were either proved to have been stolen from the victims or were sufficiently related thereto to permit the jury to infer that they too were part of appellant's common scheme. To the extent the items on the inventory were not related to the thefts charged, we find this admission to be harmless beyond a reasonable doubt. For the

reasons stated it was not error to admit the inventory list to rebut appellant's testimony.

■ Relying on *Schrum v. Commonwealth*, 219 Va. 204, 246 S.E.2d 893 (1978), appellant further argues that the trial court erroneously permitted Officer Bond to testify to responses made by appellant to Bond's inquiry as to where appellant had acquired the Cadillac. The inquiry had been made as a part of Bond's preliminary investigation but after appellant's *Miranda* rights had been given. The facts in *Schrum* are substantially different from the case before us. There, the defendant, accompanied by his attorney, surrendered to the police. He signed the *Miranda* form and on advice of counsel refused to respond to police interrogation. At trial, the Commonwealth Attorney was permitted to cross-examine Schrum about his refusal to make a statement. The Supreme Court held that his refusal to respond was not admissible at trial and that the cross-examination violated Schrum's constitutional right to remain silent. The case before us is controlled by *Squire v. Commonwealth*, 222 Va. 633, 283 S.E.2d 201 (1981). In *Squire*, as here, the defendant voluntarily responded to questions. "Once [appellant] broke his silence . . . he did not have the right to remain silent selectively." *Id.* at 638, 283 S.E.2d at 205. As in *Squire*, we hold that the record shows that appellant chose not to rely on his right to remain silent, and that the expression, apparently intended to further express lack of knowledge of the theft, was properly admitted.

In our review of the applicable law and the evidence presented at trial, we hold that there has been no showing that the trial court abused the discretionary powers contained in Rules 3A:6(b) and 3A:10(b) as interpreted by *Cheng*, 240 Va. at 33-34, 393 S.E.2d at 603, and *Fincher*, 212 Va. at 553, 186 S.E.2d at 76. Moreover, we observe that upon the facts disclosed by this record the appellant received the fair trial to which he was entitled.

For the reasons stated, the judgments of the trial court are affirmed.

*Affirmed.*

Willis, J., concurred.

Barrow, J., dissenting.

Although I agree that the defendant's incriminating statement was admissible, the trial court, in my opinion, erred in denying the defendant's severance motion and in admitting the inventory of the contents of the automobile.

## SEVERANCE

The commission of four burglaries, three involving auto store-houses and one an industrial materials business, over a period of a month and one-half in a large city, does not, in my opinion, manifest a "common scheme or plan."

Severance in a criminal case is controlled by the Rules of the Supreme Court. Rule 3A:10(b); *see Brown v. Commonwealth*, 223 Va. 601, 607, 292 S.E.2d 319, 322 (1982); *Cook v. Commonwealth*, 7 Va. App. 225, 228, 372 S.E.2d 780, 782 (1988); *Godwin v. Commonwealth*, 6 Va. App. 118, 121, 367 S.E.2d 520, 521-22 (1988). Under these Rules, an accused may be tried for more than one offense at the same time only if (1) "justice does not require separate trials" and (2) "the offenses meet the requirements of Rule 3A:6(b) [or] the accused and the Commonwealth's attorney consent thereto." Rule 3A:10(b). Since the accused and the Commonwealth's attorney in this case did not both consent to the four burglaries being tried together, each of the other two requirements had to be met.

Rule 3A:6(b) requires that the offenses be based on "the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan." Rule 3A:6(b). These four burglaries were not based on the same act or transaction nor was there any suggestion that they were based on two or more acts or transactions that were connected. Therefore, to meet the requirements of Rule 3A:6(b) these four burglaries must be based on two or more acts or transactions that constitute a common scheme or plan.

A "common plan" as used in the context of a criminal defendant's right to severance means that the "relationship among offenses . . . is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not attainable by the commission of any of the individual offenses." 2 *ABA Stan-*

*dards for Criminal Justice* § 13-1.2, commentary at 13.10 (1980). It does not mean multiple offenses of a similar nature committed by the same person or persons. *Cook,* 7 Va. App. at 228, 372 S.E.2d at 782; *see also* 2 *ABA Standards for Criminal Justice* § 13-1.2, at 13.35 (Supp. 1982). A conspiracy is a particularly appropriate application of the concept of "common scheme." *Dorantes v. Commonwealth,* 222 Va. 383, 385, 281 S.E.2d 823, 824 (1981) (conspiracy to rob banking institutions in Arlington, Virginia). Even if a conspiracy is not charged, if the offenses are based on a single plan common to all offenses, the offenses "constitute parts of a common scheme or plan." *See Cook,* 7 Va. App. at 229, 372 S.E.2d at 782 (three offenses of concealing cigarettes within thirty minutes of each other at three convenience stores in the same area by the same two people driving the same car).

The majority does not attempt to define the meaning of Rules 3A:10(b) and 3A:6(b); it concludes instead that the issue is whether the trial court abused its discretion and that it did not. It relies, understandably, on language appearing in *Cheng v. Commonwealth,* 240 Va. 26, 33-34, 393 S.E.2d 599, 603 (1990).

The majority's reliance on *Cheng* is, in my opinion, misplaced. In *Cheng,* the Supreme Court refers to Rules 3A:10(b) and 3A:6(b) to define when a trial court may require an accused to be tried at one time for multiple offenses pending against him. However, immediately following that reference, it concludes that "[w]hether different offenses should be tried *separately* is a matter that rests within the sound discretion of a trial court." *Id.* at 33-34, 393 S.E.2d at 603 (emphasis added). In support of this proposition it. cites two decisions based on the law as it existed prior to the adoption of Rule 3A:10.[7]

Rule 3A:10 gives a trial court absolute discretion to try an accused *separately* for different offenses, but carefully limits the trial court's discretion to try an accused at one time for more than one offense. By saying that the trial court "*may* direct that an accused be tried at one time for all offenses," (emphasis added) the rule permits a trial court to try an accused separately for dif-

---

[7] *Fincher v. Commonwealth,* 212 Va. 552, 553, 186 S.E.2d 75, 76, *cert. denied,* 409 U.S. 913 (1972) (decided January 17, 1972, affirming a judgement presumably entered prior to January 1, 1972, the effective date of Rule 3A:10); *Bryant v. Commonwealth,* 189 Va. 310, 315, 53 S.E.2d 54, 56 (1949).

ferent offenses even if the offenses meet the requirements that would permit him to be tried for multiple offenses at one time. However, the rule limits the trial court's discretion to try an accused for multiple offenses at one time to those occasions where "justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto." Therefore, where an accused is to be tried separately for multiple offenses, the trial court has absolute discretion. Where, however, the accused is to be tried at one time for multiple offenses, the discretion is appropriately circumscribed by Rules of Court.

The language in *Cheng* correctly states that the decision to try different offenses "*separately* is a matter that rests within the sound discretion of the trial court" (emphasis added). This language, however, cannot be read to refer to the decision to order the offenses to be tried *together* for, to so hold, would conflict with the plain language of Rules 3A:10(b) and 3A:6(b). The decision to order the joint trial of multiple offenses is, by Rules of Court, not a matter committed solely to the exercise of the trial court's sound discretion. The trial court's discretion is exercised with reference to whether the offenses meet the requirements of Rule 3A:6(b) and, if so, whether the ends of justice nonetheless require separate trials. The policy considerations reflected in Rules 3A:10(b) and 3A:6(b) are important to the administration of criminal justice in Virginia because they implement the fundamental precept that "like cases be treated alike." If a trial court's discretion to try an accused at one time for multiple offenses is limited by Rule 3A:10(b) uniformity is encouraged, but, if the trial court's discretion is absolute, disparity will follow.

For the reasons stated, I conclude that the requirements of Rule 3A:6(b), and also, therefore, Rule 3A:10(b), were not met and that the trial court erred in refusing to sever the offenses relating to each burglary. However, there was no error in joining the offenses of burglary and larceny where they arose out of the same transaction.

## INVENTORY

I also would hold that the trial court erred in admitting the inventory of the contents of the automobile. The inventory listed approximately seventy items of tangible personal property. Some

of this property was taken during the burglaries with which he was charged, and evidence that he had these items in his possession would have been admissible. However, other items on the inventory were not taken during the burglaries but appeared to have been stolen on other occasions since they belonged to other people. These included the license plate which had been stolen, the driver's license, a number of billfolds belonging to other people, and various pieces of women's jewelry. This evidence did not tend to prove the defendant's involvement in the four burglaries with which he was charged. It only suggested to the jury that the defendant may have also been involved in other unrelated crimes. The admission of such evidence was not harmless error.

Since, in my opinion, the trial court erred in denying the motion to sever the offenses and in admitting the inventory, I would reverse the defendant's convictions and remand the proceeding for a new trial.