## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Cynthia Bryant

v.

Ilene Terrell and
Eugene Voloshin

April 9, 1996

Case No. CL94-15

BY JUDGE WILLIAM H. LEDBETTER, JR.

Following a three-day trial in this medical malpractice case, the jury returned a verdict for the plaintiff Bryant in the amount of $500,000.00. The defendant, Dr. Voloshin, has filed post-verdict motions.

*Facts*

On May 18, 1990, Dr. Ilene Terrell, a local podiatrist, performed a bunionectomy on Bryant's left foot. Dissatisfied with the rate of recovery, Bryant sought a "second opinion" from Dr. Eugene Voloshin, another Fredericksburg podiatrist. She obtained her medical records from Dr. Terrell and saw Dr. Voloshin on July 11, 1990.

On July 30, 1990, Dr. Voloshin removed the tibial sesamoid located under the great toe on Bryant's left foot. He opined that the sesamoid should be removed because of erosion of cartilage and a fusing of the sesamoid to the base of the metatarsal. Although Dr. Voloshin did not defend the claim at trial by offering evidence of malpractice on the part of Dr. Terrell, Bryant testified that on her first visit to Dr. Voloshin and thereafter, he told her and her husband, in unusually strong language, that her problems were the result of Dr. Terrell's ineptness. Dr. Terrell testified that Dr. Voloshin told her essentially the same thing a few weeks later in a telephone conversation.

After the sesamoid removal, Bryant suffered considerable pain and disability. Three surgical procedures performed by Dr. Robert S. Adelaar, an orthopedic surgeon at M.C.V., were needed to ameliorate the condition.

At the end of the first day of trial, Bryant nonsuited Dr. Terrell. The trial proceeded against Dr. Voloshin. As stated in Dr. Voloshin's post-verdict motions, issues of liability and damages were "hotly contested." On the issue of liability, the jury heard testimony on behalf of Bryant that Dr. Voloshin violated the applicable standard of care by unnecessarily removing the tibial sesamoid, proximately causing Bryant's foot problems, including permanent impairment of her ability to walk, squat, stand on tiptoes, and wear normal footwear. The jury also heard testimony on behalf of Dr. Voloshin that he complied with the applicable standard of care in his treatment of Bryant.

On the issue of damages, Bryant presented medicals of $15,367.56. She made no claim for lost wages. The court refused to allow the jury to consider loss of earning capacity as an item of damages. Uncontradicted, Bryant testified about the excruciating pain, discomfort, anguish, and the impairment of her ability to ambulate normally. She lost her job as manager of a small discount store in Colonial Beach because of difficulty stocking shelves and standing for long periods of time. Her replacement employment, while financially comparable, involved sedentary tasks that Bryant did not enjoy. In closing argument, counsel for Dr. Voloshin conceded that Bryant had undergone a "life-altering" experience.

### Motion to Set Aside Verdict Based on Improper Statements Regarding Dr. Voloshin's Relationship with Dr. Terrell

As mentioned above, the jury heard testimony that Dr. Voloshin told Bryant and her husband that her problem had been created by Dr. Terrell. Dr. Voloshin denied making such comments, but Dr. Terrell testified that he told her essentially the same thing, in even stronger language, a few weeks later.

At a pre-trial hearing, Dr. Voloshin moved to exclude any evidence about ill feelings that Dr. Voloshin may have had toward or expressed about Dr. Terrell. The court denied the motion, observing that such evidence would be relevant to Bryant's contention that Dr. Voloshin decided too hastily to remove her tibial sesamoid without the appropriate careful and complete diagnostic analysis for a surgical procedure of such significant consequences. As in all rulings on pre-trial motions in limine, the court was without benefit of hearing the evidence itself or the context in

which it would be adduced. See, e.g., *Harward v. Commonwealth*, 5 Va. App. 468, 474 (1988). If Bryant did not provide proper context and connection at trial, a motion to strike that evidence would have been in order, but none was made.

Dr. Voloshin contends that the evidence regarding his view of Dr. Terrell and her performance of the bunionectomy were irrelevant to the issues in the case. However, the test of relevancy is not whether the evidence conclusively proves a point but whether it tends to support the asserted proposition. While a single fact or circumstance, standing alone, may appear to be entirely immaterial, it frequently happens that the combined force of several concurrent and related factors may lead a reasonable mind irresistibly to a conclusion. Therefore, every fact, however remote, that tends to establish the probability or improbability of a fact in issue can be admissible. See 1 Friend, *The Law of Evidence in Virginia*, § 11-2 (4th ed. 1993).

The single most important issue in the case was whether Dr. Voloshin properly diagnosed Bryant's condition. Whether removal of the tibial sesamoid was medically necessary or proper depended on the way that issue was resolved.

In support of her position that Dr. Voloshin misdiagnosed her condition, Bryant offered abundant evidence to contradict Dr. Voloshin's finding that the tibial sesamoid was fused to the metatarsal or otherwise "frozen." She presented evidence that Dr. Voloshin's pre-operative diagnostic tests and the other bases for his diagnosis, reflected in his scant records, were woefully inadequate given the "life-altering" surgery that he performed. That Dr. Voloshin held Dr. Terrell and her surgical procedure in low regard and said so in harsh terms provided one explanation, or perhaps a partial explanation, for his incomplete evaluation and misdiagnosis. Even Dr. Voloshin's witnesses conceded that his office notes and his operative report were deficient, so that it was difficult to determine, other than by Dr. Voloshin's own sketchy recollections, exactly what diagnostic procedures he followed, or why, before concluding that Bryant's tibial sesamoid had to be removed.

Further, the possibility of prejudice to Dr. Voloshin was minimal. Testimony regarding Dr. Voloshin's view of Dr. Terrell and her work was quite limited and was heard only during the early stage of the three-day trial. Bryant put no undue emphasis on that point. The mere possibility of prejudice is not sufficient to exclude relevant evidence. It is only when the prejudice is out of proportion to the probative value of the evidence that

exclusion is proper. *Ferrell v. Commonwealth*, 11 Va. App. 380 (1990). Considering the entirety of the evidence in this case, the court is of the opinion that the jury did not base its verdict in whole or in part upon the single circumstances that Dr. Voloshin expressed disdain for Dr. Terrell's abilities, either in general or with reference to her performance of the bunionectomy on Bryant.

### Motion to Set Aside Verdict Because It Is Excessive As a Matter of Law

Dr. Voloshin argues that Bryant's only "economic damages" were medical expenses of $15,367.56. She had no lost wages and no loss of earning capacity. Further, he says, the only "significant limitation . . . was an alternation in gait leading to pain in her foot and other parts of her body with prolonged standing or walking." Under these circumstances, he concludes, the jury award "bears no reasonable relationship to the injuries sustained . . . ."

Dr. Voloshin's argument regarding the amount of Bryant's "specials" is accurate. With respect to his argument that Bryant's only limitation is "alteration in gait," the evidence supports a different conclusion. "Gait" is defined as the manner of walking or running. Clearly, the evidence in this case establishes that Bryant has suffered more than an alternation in the *manner* in which she walks and runs. Her choice of employment has been permanently narrowed, and the sedentary work that she now does is out of character for her and not to her liking. Her abilities to walk, run, squat, stand on tip-toes, even to walk or stand at all for long periods, is not merely "altered," it is permanently impaired. As a young woman, it is significant to her that she must wear special-design sneakers everywhere she goes. The fact that she cannot bend the great toe of her left foot is noticeable. The fact that much of her weight must be shifted unnaturally to other parts of her left foot when she walks causes discomfort with which she must reckon for her lifetime.

An order setting aside a jury verdict is a drastic remedy. If there is any credible evidence that supports the verdict, it must be upheld. In considering such a motion, the trial court does not weigh the evidence; instead, the court determines as a matter of law whether the jury could have reached its verdict after a reasonable consideration of the evidence and instructions. If, after granting such a motion, the judge cannot enter judgment for the other party, a new trial is ordered. Where a verdict is set aside because the amount is inadequate or excessive, the new trial may be on all

issues, or on the issue of damages only, depending on the circumstances. The court also may offer a remittitur or additur, putting a party "on terms" to accept the court's figure for damages or submit to a new trial. See Virginia Code § 8.01-430; § 8.01-383; Bryson, *Handbook on Virginia Civil Procedure*, pp. 452 et seq. (1989); Middleditch and Sinclair, *Virginia Civil Procedure*, § 13.13 (2d ed. 1992).

As this court observed in another case involving permanent injuries:

> A trial judge has the authority and duty to correct a verdict that is so excessive as to shock the conscience of the court or to compel the conclusion that the verdict or the size of it was the product of passion or prejudice or some misunderstanding of the facts or the law. However, a trial judge should not arbitrarily substitute his opinion of proper damages for that of the jury. Where the damages award is supported by some logical interpretation of the evidence as to damages, the verdict should not be disturbed. [Citations omitted.] *Galson v. Brown*, 34 Va. Cir. 329 (1994).

In this case, in a nutshell, the real damages issue is the monetary value of Bryant's permanent impairment. That question, as most questions involving the quantum of damages to which a plaintiff is entitled for a permanent injury, is for the jury. The jury observed Bryant. The jury heard her evidence about how her life has been substantially altered as the result of the removal of the tibial sesamoid. The jury heard the medical evidence regarding the consequences of such a condition. Under these circumstances, the size of the verdict does not shock the conscience of the court.

### Conclusion

For the foregoing reasons, the post-verdict motions will be denied, and the clerk will prepare a final order entering judgment on the jury verdict in favor of the plaintiff in the amount of $500,000.00, plus interest at the judgment rate from the date of the judgment order.